JOHN HOFSASS *vs.* MARY J. MANN.

*Deed—Effect of Omission of word "Heirs" in a Deed— How omission may be Cured—Nature of Estate conveyed — Covenant.*

Prior to the Act of 1856, ch. 154, except in cases of trusts, the word "heirs" was essential in a deed, to make it create an estate in fee. But the omission of the word "heirs" might be cured by reference to some other instrument which did contain that word.

A covenant only operates to assure the estate granted and described, and not to enlarge it.

S., being the assignee of the leasehold estate in a lot of ground, subsequently acquired the fee therein. Afterwards, on the 2nd day of March, 1842, S. made a deed of said lot, by full description, to L. "his executors, administrators, and assigns," with a covenant of special warranty; said deed stating that it was the same piece or parcel of ground which had been assigned and transferred to S. by a certain deed, the description of which as then given, showed that it was the deed by which she had acquired the leasehold estate. The deed from S. to L. purported to convey to L. all the "estate, right, title, property, interest, claim, and demand whatsoever, at law or in equity, of the said S. of, in, and to said (lot) to have and to hold the said (lot) and premises hereinbefore described, and hereby granted and assigned, *
* * * unto the said L., his executors, administrators, or assigns, in as full, large, ample, and beneficial a manner, to all intents and purposes, as she the said S., her executors, administrators, or assigns, might, should, or ought to have held and enjoyed the same by virtue of the indenture above referred to, or by any other ways or means whatsoever." HELD:

Hofsass *vs.* Mann.

1st. That this case did not fall within any of the exceptions to the general common law rule that in deeds the word "heirs" is necessary in order to transfer the fee.

2nd. That as S. at the date of her deed to L. unquestionably had a fee simple estate, if, in said deed reference had been made to the deed by which she acquired the fee, and that had been mentioned as describing the property she was conveying to L., such reference would have cured the omission of the word "heirs," and L. would have taken the fee.

3rd. That in the absence of such reference the construction of the deed must be in accordance with the rule obtaining until the year 1856, when the Legislature of this State abrogated it, that the word "heirs" is essential in a deed to make it create an estate in fee, except in certain cases of trusts.

4th. That the limiting words, "executors, administrators, or assigns," used in the deed to L. being those appropriate for limiting a leasehold estate, but that paper not being a properly constructed lease, it must be held to convey the largest estate which S. could give consistently with the language used, and that was an estate during the grantee's life.

5th. That the covenant of special warranty, contained in the deed, could not operate to enlarge the estate thereby granted.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Henry J. Broening,* and *H. F. Halbach,* for the appellant.

\**Rufus W. Applegarth,* and *Julian I. Alexander,* for the appellee.

IRVING, J., delivered the opinion of the Court.

\*Present, but did not participate in the argument.

The decree of the Circuit Court of Baltimore City from which this appeal was taken, is for the specific performance of a contract for the sale of a parcel of land by the appellee to the appellant.

The appellant resists compliance on the ground, as he alleges, that the appellee can not make him a good title in fee for the property which, in writing, she has contracted to sell him, and he by the same writing has agreed to buy.

The decree appealed from adjudges that Mrs. Mann, (the appellee,) has a fee simple title which the appellant is compelled to take and pay for in accordance with the agreement.

From the agreed statement of facts it appears, that on the thirtieth day of January, (1768) seventeen hundred and sixty-eight, the ground in controversy was leased for ninety-nine years, renewable forever, by one Cornelius Howard to a certain Conrad Smith; and that after sundry mesne conveyances, the lot in question was on the (20th) twentieth of April (1795) seventeen hundred and ninety-five, conveyed to John Stump, subject to the yearly rent of eight shillings and four pence. On the 8th of January, eighteen hundred and seventeen (1817), the executors, legatees and children of John Stump assigned the leasehold estate in the lot of ground in question to Priscilla Stump. Afterwards a certain Henry P. Sumner, having become entitled to the reversion in fee in the lot, for the consideration of twenty-seven dollars, conveyed the same to Priscilla Stump. The rent reserved was thus extinguished, and Priscilla Stump's estate became a fee, by the merger of the leasehold in the fee. On the second of March (1842) eighteen hundred and forty-two, Priscilla Stump made and executed to Thomas W. Levering the deed through which the appellee claims her title, by mesne conveyances, till she obtained a deed purporting on its face to

convey a fee simple estate. As the whole case turns upon the proper construction and effect of this deed from Priscilla Stump to Thomas W. Levering, we set out the granting clause, and the *habendum* clause, which are as follows: "Witnesseth that for and in consideration of the sum of five thousand dollars, current money, by the said Levering to the said party of the first part, at and before the sealing and delivery of these presents in hand paid, the receipt whereof is hereby acknowledged, the said Priscilla Stump hath given, granted, bargained, and by these presents doth give, grant, bargain, sell, transfer and assign unto the said Thomas W. Levering, his executors, administrators and assigns, all that part of a lot or parcel of ground situated and lying in the City of Baltimore aforesaid, and distinguished on the plat of Baltimore town by the number 583, which is contained within the metes and bounds, courses and distances following, that is to say, (here follows the description;) the same being and comprising the piece or parcel of ground which was assigned and transferred, by John Archer and John W. Stump, executors of John Stump, and others, to Priscilla Stump, by indenture bearing date on or about the (8th) eighth day of January (1817) eighteen hundred and seventeen, and recorded among the land records of Baltimore County Court in Liber W. G., No. 140, folio 1, &c., and every part and parcel thereof, with the appurtenances, and the use, benefit and privilege in common with Cassandra Stump, her executors, administrators and assigns, of an alley of the width of three feet, communicating with Hanover street, and extending easterly for a depth of fifty feet, as the same is now opened and used along the south gable end wall of the first story of the house erected on the ground hereby conveyed and assigned, and all the estate, right, title, property, interest, claim and demand whatever, at law or in equity, of her the said Priscilla Stump, of, in,

and to the said part or parcel of said lot, or of, in and to any part thereof. To have and to hold the said part of the said lot and premises hereinbefore described, and hereby granted and assigned, with the use and benefit in common, as aforesaid, of the three feet alley before mentioned, unto the said Thomas W. Levering, his executors, administrators or assigns, in as full, large, ample, and beneficial a manner, to all intents and purposes, as she the said Priscilla Stump, her executors, administrators or assigns might, should or ought to have held and enjoyed the same by virtue of the indenture above referred to, or by any other ways or means whatsoever; and the said Priscilla Stump, for herself, her executors, administrators and heirs doth hereby covenant with the said Thomas W. Levering, his executors, administrators and assigns, that she, the said Priscilla, and her heirs, executors and administrators, will warrant the said part of a lot and premises above described to the said Thomas, his executors, administrators and assigns, against all persons claiming by, through or under the said Priscilla, and the same will forever defend.''

On the twenty-fourth day of December, eighteen hundred and sixty, Thomas W. Levering by his bond agreed to sell and grant unto Mann Brothers this piece of property, calling it ''leasehold property,'' and describing it as ''the same lot of ground as that described in a deed from Priscilla Stump to the obligor,'' giving date and folio of record, showing it to be the same deed hereinbefore recited.

On the seventh of January (1862) eighteen hundred and sixty-two, Thomas W. Levering, after reciting his bond to sell this property to Mann Brothers, upon certain conditions with which the obligees had complied, and further reciting that since the sale to them it had been discovered that the title of the grantor was *not a leasehold, but a fee,* conveys to Mann Brothers a fee in the

Hofsass *vs.* Mann.

lot. Subsequently John M. Mann took a deed from his brothers for the property; then he conveyed the same to Isidore S. Soiecki who conveyed it to Mary J. Mann the appellee.

The sole question in the case is whether Thomas W. Levering, by his deed from Priscilla Stump dated the second of March (1842) eighteen hundred and forty-two, acquired a fee in the property. The appellant contends that Levering did not take a fee, and that he took only a life estate, because the estate is not limited to his heirs in terms, nor by any words which can supply that lack. The appellee, insists that Levering's deed is to be construed according to the intention of the parties to it, and that it carried a fee.

The contention of the appellant is that the appellee only took an estate *pur autre vie,* that is, during the life of Thomas W. Levering who died in 1888; because Levering took only an estate for life; and that upon Levering's death the fee reverted to the heirs-at-law of Priscilla Stump, and is now in her heirs-at-law or devisees. If this be so, of course, the appellee did not have such title as the appellant should be forced to take, and the decree of the Court below is in error.

It is an unbending rule of the common law that to create an estate in fee simple in a natural person, the conveyance must contain a limitation to such person and his heirs. The word "heirs" is the operative term, *Leading Cases of Real Property by Sharswood & Budd,* 53; and Chancellor KENT in his *Commentaries, vol.* 4, pages 5 and 6, says "the limitation to the heirs must be made in direct terms, or by immediate reference, and no substituted words of perpetuity, except in special cases, will be allowed to supply their place, or make an estate of inheritance of feoffments and grants." Lord COKE (*Coke Littleton,* 9 *a*) speaking of the word heirs, says, "there are words so appropriated by the law as that they can

not be legally expressed by any other word, or by any periphrasis or circumlocution;'' and following that rule this Court in *Handy, et al. vs. McKim, et al.,* 64 *Md.,* 572, determined, that the ''limitation over to such person or persons as would be entitled to take from Anne McKim by descent'' were not such words as would form a substitute for the word heirs as to justify the application of the rule in *Shelley's Case.*    This was so decided, notwithstanding none but *heirs* could take by descent, and that phrase described none others but heirs.

There are no doubt some few exceptions to this general rule, and this Court has frequently recognized them.    The cases of *Budd vs. Brooke, et al.,* 3 *Gill,* 234; *Spessard, et al. vs. Rohrer, et al.,* 9 *Gill,* 261; *Farquharson vs. Eichelberger, &c.,* 15 *Md.,* 73; *Hawkins, Trustee vs. Chapman, et al.,* 36 *Md.,* 94; *Merritt vs. Disney,* 48 *Md.,* 344; *Larmour vs. Rich, et al.,* 71 *Md.,* 381.    This case, however, does not fall within the reason of any of those cases we have referred to; nor does it fall within any of the exceptions collected and stated in *Prestman on Estates,* and *Sharswood & Budd's Leading Cases upon Real Property.*    The omission of the word ''heirs'' may be cured by reference to some other instrument which does contain the word ''heirs;'' but in this instance the reference is to an instrument, which not only does not contain the word ''heirs,'' but in express terms conveys to the grantee a leasehold estate.   When the deed to Thomas W. Levering was made, Priscilla Stump unquestionably had a fee simple estate; and if in her deed to Levering reference had been made to the deed from Sumner to her conveying her a fee, and that had been mentioned as describing the property she was conveying to Levering, we should have no difficulty in deciding that by such reference the omission of the word ''*heirs*'' was cured, and that Levering took the fee.    But there is no reference whatever to the deed from Sumner, and not only is the deed to Priscilla

Stump by the representatives of John Stump referred to, which did only convey her a leasehold estate, but the estate conveyed thereby is called in Levering's contract with Mann Brothers a "leasehold estate."

It is an undoubted rule, and one frequently adverted to in the decisions of this State, that Courts will inspect the grant to ascertain the intention the parties had in making and accepting it, and will then so expound the deed as to give effect to that intention unless expressions are employed which prevent such construction. If to do so, however, will violate some well established principle of law, then the instrument must be construed as its legal terms require, whatever might be supposed to have been the intention of the parties. *Reed, Howard, et al. vs. Stouffer, et al.*, 56 *Md.*, 253; *Budd vs. Brooke, et al.*, 3 *Gill*, 234; *Benson vs. Boteler*, 2 *Gill*, 77.

To give this deed such a construction as that contended for by the appellee would contravene the rule already cited as obtaining from the days of *Littleton and Coke*, to 1856, when the Legislature of this State abrogated it, that the word "heirs" is essential in a deed to make it create an estate in fee. The unbending nature of this rule prior to 1856, is, as we have already stated, recognized as recently as in *Handy, et al. vs. McKim, et al.*, 64 *Md.*, 572, which case enumerates the cases wherein the exceptions are found, and the rule has been departed from. None of those cases however bear any analogy to this case. They were all cases of trust; and if this was a case of trust we should have no difficulty in concurring with the view entertained by the Court below in deciding this case. At common law, Chancellor KENT says, in 4th vol., of his *Commentaries*, page 61, "though the intent of the parties be ever so clearly expressed in a *deed*, a fee cannot pass without the word heirs;" but in wills, he says the same rule will not be applied. But counsel for the appellee contends that this rule has never obtained in Maryland as strictly as it did in England;

and reliance is placed on the Act of 1715, ch. 47, sec. 10, which provides that every deed required to be recorded " shall at all times be construed and taken more favorably and beneficially for the benefit and advantage of the grantee or grantees, and more strongly for barring the grantors therein named, and according to such intents as by the words thereof shall appear to have been the true intent of the parties thereunto, although the same be not so firmly drawn as is used in England, where the advice of counsel learned in the law may be had." We have been cited to no case, and after careful search we have been able to find no case, wherein this provision of the Act of 1715 has been resorted to, relied on, or decided as abrogating the rule of the common law requiring the use of the word "heirs" in order to limit an estate in fee. Whatever may have been the original intent of this provision of the Act of 1715, we cannot find it now to be of such controlling effect as to justify our holding a deed to create an estate in fee, before the Act of 1856, which lacks the word "heirs," the essential word of the common law.

The Constitution of the State first adopted, by its Bill of Rights, which has since been re-adopted, guaranteed to the people of the State the common law of England, by which the word "heirs" was always held necessary to limit a fee ; and all the decisions of the State have announced that as the unbending rule, except in certain cases of trust already referred to. But even if the deed under consideration be read in the light of the Act of 1715 as controlling its construction, as that Act says *the words* must import the intent, we should find serious difficulty in giving the deed the construction contended for by the counsel for appellee, ingenious as his argument has been. This deed purports to convey to Thomas W. Levering the estate which Priscilla Stump acquired from the executors and representatives of John Stump, viz., a leasehold estate. Reference is made to that deed

and no other. The limiting words are to the "grantor's executors, administrators or assigns"; being the same words used in the first deed to her. They are appropriate words for limiting a leasehold estate. Levering supposed it was a leasehold estate he was buying ; for it was such an estate that years afterwards he contracts to sell to Mann Brothers. In fact, as we have already stated, when Priscilla Stump sold to Levering, her leasehold estate had merged in a fee by reason of Sumner's deed to her. The paper she did execute to Levering was not a properly constructed lease, and it must be held to convey the largest estate which Priscilla could give consistently with the language used, and that was an estate during the grantee's life. *Clearwater vs. Rose, &c.,* 1 *Blackford, Ind.,* 137. When Levering therefore conveyed to Mann Brothers, he did not have a fee, as his deed recites that he had discovered he had, but only an estate for and during the term of his own life. Consequently the appellee could, by virtue of the deeds bringing the estate to her, get no more or larger estate than Levering had. She therefore took an estate for and during his life only, and when he died her interest and estate was at an end. It is not necessary to advert to the argument as to the effect of the covenant, further than to say that this Court decided in *Second Universalist Society vs. Dugan*, 65 *Md.*, 471-2, that a covenant only operates to secure the estate granted and described, and does not enlarge the estate. Numerous authorities are there cited for that statement of the law of covenants.

From what we have said it is apparent that we do not think the appellee could give the appellant a fee in the property she contracted to sell him, and there was error, therefore, in the decree requiring him to complete the purchase and pay for the property.

*Decree reversed, and*
*bill dismissed.*

(Decided 17th June, 1891.)