ENSOR ET UX. *v.* WEHLAND, Executor, ETC.

(Two Appeals in One Record)

[No. 427, September Term, 1965.]

*Decided July 20, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, OPPENHEIMER and MCWILLIAMS, JJ.

*Eugene G. Ricks* for the appellants.

The Court declined to hear argument from the appellee. *Charles E. Wehland* and *William E. Brannan* on the brief for the appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This appeal turns on the meaning of an agreement purporting to give an option to purchase a parcel of land improved by a dwelling at 1626 York Road in Lutherville. Mrs. Katherine Washburn, the original appellee, and Mr. and Mrs. Wilton L. Ensor, the appellants, were neighbors. The Ensors had known Mrs. Washburn for over 20 years and six or eight years before the option agreement was executed they purchased an adjoining lot and erected a dwelling thereon. In August of 1958, the Ensors and Mrs. Washburn entered into an agreement in respect of the purchase of the rear portion of 1626 York Road; that contract was consummated February 18, 1959. On the same date, the option agreement, the subject of this litigation, was executed. The pertinent parts of that agreement read as follows: [1]

> "THIS AGREEMENT, made this 18th day of February, 1959, by and between KATHERINE WASHBURN of Lutherville, in the State of Maryland, hereinafter called Optionor, and Wilton L. Ensor and Alice M. Ensor, of Lutherville, Maryland, hereinafter called Optionees.
>
> "WITNESSETH, that in consideration of the sum of $5.00 paid by said Optionees to said Optionor, the receipt of which is hereby acknowledged by said Optionor, said Optionor hereby grants unto said Optionees, their heirs, personal representatives and assigns, the exclusive right or privilege of purchasing

---

1. The omitted portions require tender of marketable title and transfer of possession if the option is exercised and forfeiture of the right to exercise the option if it is not timely exercised.

the following property now held by said Optionor in fee simple and which is described as follows:

"The property at 1626 York Road, Lutherville, Maryland, including the main dwelling house and the balance of the land not included in the sale of the rear portion as surveyed by William M. Maynadier and purchased by the Optionees hereto.

"IT IS AGREED that this option agreement is subject to the following terms and conditions:

"1. That in the event Katherine Washburn, the owner of the property, shall decide to sell the said property, she will first give notice to the Optionees of her intention to sell.

"2. That if the Optionees desire to exercise their option to puchase, they must then notify the Optionor of their intention to purchase within a period of 15 days from the delivery to them of the notice of intention to sell.

"Said notice of election by the Optionees, their heirs, personal representatives or assigns to purchase shall be in writing and shall be given to the Optionor, her heirs, personal representatives or assigns. The Optionees shall then give notice of their election to purchase within 15 days of receipt of intention to sell.

"The price which the Optionees agree to pay for the above described property shall be $12,000.00. The terms of payment to be in cash at the time of settlement * * *."

Subsequently a dispute arose between the parties as to the rights to the proceeds ($400) of the State's acquisition of a narrow strip of land referred to in the agreement. The acquisition was required in connection with the widening of York Road. Mrs. Washburn filed a petition for declaratory judgment against the Ensors in the Circuit Court for Baltimore County in which she asked for a declaration of her rights and obligations, if any, under the option agreement, including her rights to a credit for the value of improvements made by her to the property and to the proceeds of the State's payment for the strip which it had acquired. After a hearing at which testi-

mony was taken, Judge Jenifer filed an opinion on August 6, 1965 and entered a decree on August 31, 1965. The decree held that the agreement is binding and enforceable, that it is limited by its terms to the life of Mrs. Washburn, the optionor, that it gives no rights to the Ensors, the optionees, against Mrs. Washburn's heirs or personal representatives unless during her lifetime Mrs. Washburn gives the Ensors notice of her intention to sell, that Mrs. Washburn is entitled to the proceeds of the State's acquisition, and that Mrs. Washburn is responsible for the county's assessment for curb improvements and any other improvements she may choose to make. The Ensors appealed and Mrs. Washburn filed a cross-appeal.[2]

The Ensors contend that the Chancellor was in error in finding the option agreement enforceable only during the life of Mrs. Washburn, the optionor, if she desired to sell, and that the proper construction of the agreement is that the option is binding and enforceable upon 15 days notice by the Ensors to Mrs. Washburn if she desired to sell or move to another residence and, in the event that Mrs. Washburn died before the happening of either of these events, then the Ensors can enforce the agreement by giving 15 days notice to Mrs. Washburn's heirs or personal representatives. The appellee contends that the Chancellor was correct in construing the option agreement as he did but that if he was incorrect and if the Ensors' construction is adopted, then the agreement is void because it violates the rule against perpetuities.

We agree with the Chancellor that the wording of the agreement is clear and unambiguous and that the option therein granted is limited by its terms to the life of Mrs. Washburn and gives no rights to the Ensors unless, during her lifetime, Mrs. Washburn decided to sell.

Paragraph 1 of the agreement provides that in the event Mrs. Washburn shall decide to sell the property she shall first give notice to the Ensors of her intention to sell. There is no other obligation imposed upon her except to execute and de-

---

2. On April 29, 1966, Mrs. Washburn died, and Charles E. Wehland was appointed executor. On motion this Court issued an order substituting Charles E. Wehland, executor, as a party in place of Mrs. Washburn.

liver a good title to the optionees for the purchase price, $12,-000, in the event that they elect to purchase within 15 days after receipt of Mrs. Washburn's notice of intention to sell. The significant words in paragraph 1 are that Mrs. Washburn shall give notice to the optionees if she "shall decide to sell the said property." These words look to a personal election by the optionor to be exercised by her and by her alone.

The use and the corresponding omission of the words "heirs, personal representatives and assigns" throughout the agreement emphasizes this construction. In the "WITNESSETH" clause, the optionor, solely and not on behalf of her heirs and personal representatives, grants unto the optionees, their heirs, personal representatives and assigns, the right to purchase the property on the conditions set forth in the agreement. There is no reference in paragraph 1 to Mrs. Washburn's heirs or personal representatives. In a subsequent paragraph, however, the notice of election by the optionees, their heirs, personal representatives and assigns, to purchase, if and when they receive notice of the optionor's intention to sell, is to be given to the optionor, her heirs, personal representatives and assigns. While under paragraph 1 the decision whether to sell is reserved to Mrs. Washburn personally and by that reservation necessarily is limited to her lifetime, she might conceivably during her lifetime have given notice to the optionees of her intention to sell and have died thereafter before the optionees had notified her of their desire to exercise the option to purchase. The provision that such notice by the optionees shall be given to the optionor, her heirs, personal representatives and assigns, covers this contingency.

Judge Jenifer clearly and succinctly set forth the meaning of the option agreement, as follows:

"In the subject option, however, all Mrs. Washburn did, as optionor, was that in the event she should decide to sell the property during her lifetime, she would give notice of such intention to the Optionees, and they would have the right to purchase the property at the stipulated amount. Mrs. Washburn did not attempt to bind her heirs and personal representatives and if she does not decide to sell the property dur-

ing her lifetime, the option dies with her. Under this construction, it would appear that the instrument limits the option to the life time of the Optionor, a life in being at the time of its creation."

We agree with his interpretation.

The word "heirs" is a word of art. *Seymour v. Heubaum,* 65 Ill. App. 2d 89, 211 N. E. 2d 897 (1965); Miller, *Construction of Wills* (1927) § 81; and the phrase "heirs, personal representatives and assigns," as used in the agreement, is a legal term with a technical meaning. The option agreement was prepared by a lawyer.[3] The omission of the words of limitation, "heirs or assigns," in a deed has been held to restrict the covenants to a life estate instead of constituting a deed of the fee simple interest. *Hofsass v. Mann,* 74 Md. 400, 405-07, 22 Atl. 65 (1891). (The rule has since been changed by statute.) The lack of these words of limitation has been held evidence of the absence of an intention to make a contract assignable. *Hillman v. Shannahan,* 4 Ore. 163, 168 (1871).

The contention of the appellants that the agreement is enforceable upon 15 days notice by the Ensors to Mrs. Washburn if, during her lifetime, she decides to sell or move, or if she dies before either such event, is not only unsupported by anything in the agreement but is in direct conflict with its terms.

The appellants contend further that the evidence offered at the hearing shows that the option agreement was only part of a transaction and that the entire transaction should be considered as a whole to ascertain the meaning of the agreement. They refer to testimony that, after Mrs. Washburn had entered into the agreement with the Ensors with respect to the purchase of the rear of 1626 York Road, Mrs. Washburn attempted to sell her entire property to a third party for the sum of $22,500 but that this sale was not consummated because of

---

3. It was drafted for Mrs. Washburn by an attorney who had represented her brother. At the settlement for the rear portion of the property, the attorney for the mortgagees, who were financing the Ensors in the purchase of the property, examined the agreement and at his suggestion the agreement was acknowledged and recorded.

the Ensors' prior right to purchase the rear portion. They refer to the fact that the purchase price for the rear of the property was $10,500 and the option price for the remainder of the property was $12,000, making the total purchase price for the entire property $22,500. The appellants attempt to infer from these circumstances a construction of the option agreement which would give them the absolute right to buy the remainder of the property, with provision only that Mrs. Washburn would have a place in which to live for a time. The short answer to this contention is that it is completely at variance with what the option agreement provides. There is no claim of fraud, duress or undue influence in the negotiations or the transactions between the Ensors and Mrs. Washburn. If the Ensors had some understanding of the agreement contrary to its unambiguous provisions, they can not place their own interpretation on what the agreement means or what it was intended to mean in place of the clear and definite import of the written terms. *Keyworth v. Industrial Sales Co.,* 241 Md. 453, 456-57, 217 A. 2d 253 (1966) and cases therein cited. The fact that the Ensors had Mrs. Washburn's property, together with their own, rezoned at their expense, does not alter the application of the rule.

Nor do we find applicable the rule of construction relied upon by the Ensors that where a contract is susceptible of two meanings, one of which would produce an absurd result and the other of which would carry out the purpose of the agreement, the latter construction should be adopted. *Born v. Hammond,* 218 Md. 184, 146 A. 2d 44 (1958) and *Gibbs v. Meredith,* 187 Md. 566, 51 A. 2d 77 (1947). We find the contract clear and susceptible of only one meaning which can not be deemed unreasonable. The applicable rule of construction is that where the words of the contract are unambiguous, conduct may not affect the construction and the meaning of the contract can not be stretched by acts beyond that which the language will bear. *Walker v. Associated Drygoods Corp.,* 231 Md. 168, 178-79, 189 A. 2d 91 (1963) ; *U. S. Naval Academy Alumni Ass'n v. American Publishing Co.,* 195 Md. 150, 156-57, 72 A. 2d 735 (1950) and authorities therein cited.

At the conclusion of the case, the court denied a motion on behalf of Mrs. Washburn to strike all the testimony which

tended to vary the written instrument. The Chancellor over-ruled the motion on the ground that he did not believe any of the evidence had in fact varied the terms of the option agreement. The record supports the Chancellor's view. At the hearing, Mrs. Washburn, who was then 80 years old and who died pending the appeal, while she did not remember much about the transaction, testified clearly that she did not want to sell the house in which she was living to anyone. Mrs. Ensor testified:

> "Well, we bought the rear with the intention of later buying the front, but Mrs. Washburn wanted a place to live there so we took an option so we would get it after she wanted to dispose of it."

Because, in our opinion, the meaning of the option agreement is clear and unambiguous, it is unnecessary to consider the rule that an interpretation which gives a lawful and effective meaning to a manifestation of intention is preferred to an interpretation which may make the contract unlawful or of no effect. Restatement, *Contracts* § 236 (a) (1932) and see *In re Estate of Snyder*, 195 Md. 81, 92, 72 A. 2d 757 (1950). Under our interpretation of the option agreement, no question of its invalidity under the rule against perpetuity arises. The option could only be exercised during Mrs. Washburn's lifetime if she decided to sell.

The provisions of the decree that any improvements which Mrs. Washburn chose to make to the property during her lifetime should be at her own expense, and that she was entitled to retain the proceeds paid for the widening strip along York Road are necessary corollaries of the Chancellor's construction of the agreement, which we affirm. As Mrs. Washburn has died during the pendency of this appeal, without giving notice of a desire to sell, the option given under the agreement has no further effect.

*Decree affirmed; costs to be paid by appellants.*