BEN SCHUSTER, ETC. ET AL. *v.* WHITE COFFEE POT FAMILY INNS, INC.

[No. 15, September Term, 1979.]

*Decided October 11, 1979.*

The cause was argued before LOWE, MASON and COUCH, JJ.

*Glenn E. Bushel* for appellants.

*Neil Tabor,* with whom was *S. Leonard Rottman* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Although appellants tend to obfuscate the issue with unwarranted complexities, the issue to be decided is simple. It is whether a shopping center landlord, who has granted to a restaurant tenant during its term,

> "... the right of non-exclusive use, in common with others, of all automobile parking areas on land owned by Landlord within the Center ..."

can eliminate part of that parking area by constructing thereon a fast food restaurant upon the justification that the landlord retained in the same lease

> "... the right ... from time to time to change the area, location and arrangement of parking areas and other common facilities; ... and to do and perform such other acts in and to said areas and improvements as, in the use of good business judgment, the Landlord shall determine to be advisable with a view to the improvements of the convenience and use thereof by tenants and customers at the Center."

The trial judge found that they could not and we agree.

Appellants pose two questions of such length as to comprise a summary of all their arguments, and it is clear that both questions and arguments are predicated upon an erroneous premise, *i.e.,* that appellee had sought and the court granted an "implied" negative easement. Appellee sought throughout, and the trial judge found, that the lease created an *express* easement which the landlord could not diminish by encroachment.

The ellipticized excerpts of the allegedly contrasting paragraphs of the lease used by counsel in the briefs, and as they were set forth in the stipulated facts,[1] provided a distorted view indicating superficial ambiguity. It is only such ambiguity which can justify the application of rules of construction. Where a contract is plain and unambiguous, there is no room for construction, *Slice v. Carozza Prop., Inc.,*

---

1. We append that stipulation for factual background.

215 Md. 357 (1958); *DWS Holdings, Inc. v. Hyde Park Assoc.,* 33 Md. App. 667 (1976), since the parties are presumed to have intended what they expressed. *Layman v. Layman,* 282 Md. 92 (1978). The lease is open to construction when, and only when, it is reasonably or fairly susceptible of different constructions. *Sands v. Sands,* 252 Md. 137 (1969); *Burbridge v. Howard University,* 305 A.2d 245 (D.C. App. 1973), quoting 17A C.J.S. *Contracts* § 294 at pp. 34-35.

When the two clauses in controversy are set forth in full and read together, clearly no ambiguity exists. Appellants, who are not the original landlords, but stand in their shoes, obviously construed the provisions in the same manner as appellee does here, *i.e.,* that they had no right to construct buildings on the parking lot. In July of 1977, they circulated among all the tenants a proposed lease amendment giving them the right to "reduce [parking areas] by erecting thereon store buildings or other structures or improvements of any kind . . . ." This was done during a pending zoning change to permit a previously precluded drive-in restaurant in the shopping center. That amendment having failed, appellants now contend that the lease is not only ambiguous, but implicitly provides the right to so construct buildings on the parking lot. We cannot overlook that construction which appellants placed upon their contract by their own acts and conduct. *Lumber Co. v. Bldg. & Savings Assn.,* 176 Md. 403 (1939).

The two paragraphs claimed to be in conflict read, in full, as follows:

> "(17) Landlord grants to Tenant during the term the right of non-exclusive use, in common with others, of all automobile parking areas on land owned by Landlord within the Center for the accommodation and parking of passenger automobiles of customers of the Tenant. Landlord reserves, however, the right to rent for its own account any parking areas or spaces constructed by it as garage, roof or underground parking within or adjacent to the Center. Tenant agrees that it will cause its officers, agents and employees to park

their automobiles only in such areas (if any) as Landlord may from time to time designate as employee parking areas, and that it will, on landlord's request, furnish to Landlord license plate numbers for any automobiles of its employees.

(18) All parking areas and facilities furnished by Landlord in or near the Center, including the truck way or ways, pedestrian sidewalks, landscaped areas, and other areas and improvements provided by Landlord for the general use, in common, of customers at the Center, shall at all times be subject to the exclusive control and management of Landlord, and Landlord shall have the right from time to time to establish, modify and enforce reasonable rules and regulations with respect to all facilities and areas mentioned in this section. Landlord shall have the right to construct, maintain and operate lighting facilities on all said areas and improvements; to police the same; from time to time to change the area, location and arrangement of parking areas and other common facilities; to restrict parking by tenants, their officers, agents and employees to employee parking areas (if any); to construct surface, subterranean or elevated parking areas and facilities; to establish and from time to time change the level of parking surfaces; to enforce parking charges (by operation of meters or otherwise) with appropriate provisions for free parking ticket validating by tenants at locations now provided as parking areas; to close all or any portion of said areas or facilities to such extent as may, in the opinion of Landlord's counsel, be legally sufficient to prevent a dedication thereof or the accrual of any rights to any person or to the public therein; to close temporarily all or any portion of the parking areas or facilities; to discourage non-customer parking; and to do and perform such other acts in and to said areas and improvements as, in the use of good business judgment, the Landlord

> shall determine to be advisable with a view to the improvement of the convenience and use thereof by tenants and customers at the Center."

When read together as we are admonished to do, *Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417 (1973), and giving effect to all of the contractual provisions, *Hart v. Hart,* 165 Md. 77 (1933), we find no conflicting provisions which may not be reconciled and accepted as binding on the parties. Therefore, no one of them ought to be rejected. *Lumber Co. v. Bldg. & Savings Assn., supra.*

It would obviously be contradictory for a lease to give the right of nonexclusive use of "all" the parking area "owned" by the landlord in the Center "during the term" of the lease, then permit the landlord to permanently deprive the tenant of all or part of it at the whim of the landlord in the very next paragraph. That would be an absurd result which we must reject if a reconcilable construction is available. *Canaras v. Lift Truck Services,* 272 Md. 337 (1974). We may not resort to that rule of construction if the contract, by its language, is susceptible of only one meaning (even if absurd), *Ensor v. Wehland, Executor,* 243 Md. 485 (1966), but the paragraphs here are not only interpretively limited but reasonably reconcilable as well.

Paragraph 17 grants an easement for a term — not a license subject to revocation. Paragraph 18 provides the responsibilities, limitations, controls and management reserved, not only to the parking areas, but all other

> "facilities furnished by Landlord, ... including the truck way or ways, pedestrian sidewalks, landscaped areas, and other areas and improvements provided by Landlord for the general use ...."

This reserved management role does not express or imply authority *permanently* to deprive the dominant estates of their rights. To the contrary, the provision goes on to say in detail the limitations of "temporarily" closing any of these areas, or to close them only

> "to such extent as may, ... be legally sufficient to prevent a dedication ...."

The distinct meaning of the limitations thus placed upon the right to close the parking areas must be given effect, *Hart, supra,* and not simply rejected. *Lumber Co., supra.*

It should be noted that appellants alternatively resort to a *"de minimus non curat lex"* argument by pointing out that while the landlord-owned parking area is only 475 spaces, an exchange agreement with the neighboring Hecht Company provided an additional 1030 spaces; thus if, as testified, the proposed drive-in restaurant consumed only 36 spaces, the reduced parking factor would be .0196.

That argument cannot be entertained, however, since the easement was granted to all land "owned" by the landlord. Assuming the reservation to "change" the parking areas allowed substitutions, such change was obviously not contemplated to be beyond those areas "owned" by landlord "within the Center," at the time of the leasing. It obviously did not consider an exchange-use agreement, not a part of the lease at the time. We further note there there is authority elsewhere indicating that a "de minimus" argument may not be available in such as the circumstances here, even allowing for the additional spaces. *Walgreen Co. v. American Nat. B. & T. Co. of Chicago,* 281 N.E.2d 462 (Ill. 1972).

The contract is clear and the easement for a parking area, absent a specific right reserved to diminish it or construct permanent improvements upon it, will be enforced. See *Md. Trust Co. v. Tulip Realty,* 220 Md. 399 (1959); see also Annot., 56 A.L.R.3d 596 *Shopping Center Lease — Parking Area Use.*

Finally, it is not necessary to decide the evidentiary question raised because we hold that the Circuit Court of Baltimore City (from whence the case has come) should have decided it as a matter of law, there being no ambiguity in the contract. The questioned testimony of other tenants concerning actual use by the public of the parking area was unnecessary.

*Judgment affirmed.*
*Costs to be paid by appellants.*

*APPENDIX*

## "STIPULATION OF FACTS

White Coffee Pot Family Inns, Inc., Plaintiff, and Ben Schuster, David Diamond, Paul Diamond and Samuel Gloger, Co-Partners t/a The Northwood Company, certain of the Defendants herein, by their respective attorneys, hereby stipulate and agree to the following facts.

1. The Northwood Shopping Center situate at Loch Raven Boulevard and Argonne Drive, Baltimore City, Maryland, is a large shopping center containing approximately 93,600 square feet of improvements, not including basements nor the second floor office area. Neither does that figure include the Hecht Company, which owns its own store in the Shopping Center. There are approximately 475 parking spaces contained in that area of the parking lot owned by the Landlord; the Hecht Company owns property which contains space for 1,030 additional vehicles. However, there is no visible boundary between the parking area owned by the Hecht Company and the remainder of the parking area, and by a recorded agreement the parking areas may be used interchangeably.

On February 1, 1967 White Coffee Pot, Jr., Inc., entered into a Lease (the 'Lease') with The Northwood Corporation, a body corporate. A copy of said Lease is attached hereto as Exhibit A. The Lease is for a term of fifteen years terminating February 28, 1982. The Lease provides that The Northwood Corporation, as Landlord, demises and leases to White Coffee Pot, Jr., Inc., as Tenant, a store containing dimensions of 17-½' x 120', and designated as No. 1518 Havenwood Road, for use as a restaurant, together with:

> '. . . the right of non-exclusive use, in common with all others, of all automobile parking areas on land owned by Landlord within the Center for the accommodation and parking of passenger automobiles of customers of Tenant.' (Exhibit A, ¶17.)

The Lease provides further that:

'All parking areas and facilities furnished by Landlord in or near the Center ... shall at all times be subject to the exclusive control and management of Landlord. ... Landlord shall have the right to ... from time to time change the area, location and arrangement of parking areas and other common facilities.' (Exhibit A, ¶18.)

Both of the quoted Lease provisions are contained in the printed portion of the Lease, which printed Lease form was submitted to Plaintiff by The Northwood Corporation, predecessor in title to the present Landlord.

3. By Articles of Merger dated December 31, 1970 and recorded among the records of the Maryland State Department of Assessments and Taxation, White Coffee Pot, Jr., Inc. merged into the Plaintiff herein (White Coffee Pot Family Inns, Inc.). Plaintiff as the surviving corporation under said merger acquired all of the rights and benefits of White Coffee Pot, Jr., as Tenant under the Lease.

4. By Deed dated September 17, 1975, and recorded among the Land Records of Baltimore City at Liber 3271, folio 874, The Northwood Corporation conveyed the entire Shopping Center (including the premises demised to Plaintiff's predecessor in title, White Coffee Pot, Jr., Inc.) to the individual Defendants. Said Defendants now operate the Shopping Center as Co-Partners t/a The Northwood Company ('Northwood').

5. McDonald's Corporation ('McDonald's'), one of the Defendants herein, entered into a Ground Lease dated February 2, 1976 with the Partnership pursuant to which McDonald's intended to construct and operate a restaurant and carry-out store on a portion of the present parking lot for the Northwood Shopping Center. A copy of the Ground Lease is attached hereto as Exhibit B. The McDonald's Lease is for a term of twenty years, together with certain renewal options. The term of the Lease was to commence upon its execution, but the Lease was subject to McDonald's obtaining the passage of a special ordinance through the Baltimore City

Council. (Exhibit B, ¶3; Exhibit B, Addendum, ¶3.) The demised premises consist of not less than 62,000 square feet, the location of which is shown on a plat attached hereto as Exhibit C.

6. Pursuant to a certain Rezoning Ordinance No. 501 enacted by the Mayor and City Council of Baltimore on or about September 1, 1977, a Business Plan Development was established for the Northwood Shopping Center, and Section 5 of the Ordinance authorized the construction of a McDonald's Restaurant and carry-out on a portion of the parking area within the shopping area belonging to Northwood. A copy of the Ordinance is attached hereto as Exhibit D.

7. On or about July 1, 1977 Isaac M. Neuberger, attorney for Northwood, sent a letter to each of the tenants in the Shopping Center, in which he described, *inter alia,* certain landscaping and sign changes which had been proposed for the Shopping Center. A copy of the letter from Isaac M. Neuberger to the tenants of the Shopping Center is attached hereto as Exhibit E. Enclosed with the letter was a 'Lease Amendment,' prepared on behalf of Northwood, which it sought to have executed by each of the tenants. A copy of the proposed 'Lease Amendment' is attached hereto as Exhibit F. White Coffee Pot did not execute the Lease Amendment, and has not executed the proffered Lease Amendment.

8. McDonald's has elected to disaffirm its Lease with Northwood; however, Northwood has a written agreement with B K Realty Company, an Ohio Limited Partnership, pursuant to which Northwood and B K Realty Company have agreed that a Burger King will be constructed and operated on the parking lot area owned by Northwood if this law suit is resolved in favor of Northwood.

9. Since White Coffee Pot commenced its tenancy in February, 1967, no building permits have been issued for the construction of any buildings upon the Northwood Shopping Center parking lot or common areas, and no construction of any such improvements (including a McDonald's or any other drive-in restaurant) within the Shopping Center parking lot or other common areas has, in fact, commenced.

The parties hereto, by their respective attorneys, hereby stipulate and agree that this Stipulation of Facts shall be filed in the within proceedings. The parties further stipulate and agree that the within Stipulation of Facts shall not preclude either party from presenting additional evidence at the hearing.

s/ Neil Tabor
_____

Neil Tabor

s/ S. Leonard Rottman
_____

S. Leonard Rottman

Attorneys for Plaintiff,
White Coffee Pot Family Inns, Inc.

s/ Glenn E. Bushel
_____

Glenn E. Bushel

Attorney for Defendants,
Schuster, et al, t/a
The Northwood Company"