JOSEPH A. W. IGLEHART *v.* H. COURTENAY
JENIFER, JR. ET AL.

[No. 591, September Term, 1976.]

*Decided April 7, 1977.*

The cause was argued before THOMPSON, DAVIDSON and
MASON, JJ.

*Francis N. Iglehart* for appellant.

*E. Harrison Stone,* with whom were *Royston, Mueller &
McLean, James Dawson, Cable, McDaniel, Bowie & Bond*
and *Charles A. Velte* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

This is an appeal from a decree passed by Judge Walter R. Haile sitting in the Circuit Court for Baltimore County, sustaining the appellee's demurrer and dismissing the appellant's bill of complaint. The sole question presented is did the appellant's right of first refusal to purchase certain real estate terminate upon the death of the optionor.[1]

In his bill of complaint Joseph A. W. Iglehart, the appellant, alleged the following: (1) on July 30, 1968, he and the late Ilma M. Jenifer entered into an agreement by which she granted unto Iglehart the right of first refusal or option to purchase her property upon receipt of an acceptable offer to purchase the same from any other person; (2) the said Ilma M. Jenifer died on October 28, 1975, and that the appellees, H. Courtenay Jenifer, Jr. and Clinton T. Pitts were issued letters as personal representatives of her estate; (3) the personal representatives of her estate listed the Jenifer property with the appellee Piper and Co., Inc., as a result of which Iglehart made an offer to purchase the property; and (4) the personal representatives accepted the offer of "The Lamb of God," a Maryland corporation, for the price of $260,000.00 without affording appellant an opportunity to match said price under the option agreement and that appellant was ready to match the offer of the price established by the contract with "The Lamb of God." After other allegations, not here relevant, the bill prayed the court determine the validity and effect of the option. The option

1. Some authorities draw a distinction between an option and a right of refusal, calling the latter a pre-emption. "An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he is willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price." 6 American Law of Property, § 26.64, p. 507. *See also* Mercer v. Lemmens, 230 Cal. App. 2d 167, 40 Cal. Rptr. 803 (1964); Old Mission Peninsula School District v. French, 362 Mich. 546, 107 N.W.2d 758 (1961). The Maryland cases, however, speak in terms of a right of refusal as a type of option, as shall we. *See* Ensor v. Wehland, 243 Md. 485, 221 A. 2d 699 (1966) and Westpark, Inc. v. Seaton Land Co., 225 Md. 433, 445, 450, 171 A. 2d 736 (1961).

agreement was attached to the bill of complaint and in relevant part provided as follows:

> "ILMA M. JENIFER, party of the first part, hereby gives and grants unto JOSEPH A. W. IGLEHART, party of the second part, his heirs and assigns, the irrevocable right, privilege and option to purchase the premises described hereinbelow when the said party of the first part receives a firm offer to purchase the said premises by another party, acceptable to the party of the first part, and such right, privilege and option to purchase the said premises shall be for the same price and on the same terms as the said firm offer to purchase by another party."

We hold, as did the trial judge, that the agreement terminated upon the death of Mrs. Jenifer. In that agreement the parties were very careful to use the words, "heirs and assigns" when referring to the optionee. They were just as careful to eliminate those words when referring to the optionor. The phrase, "heirs and assigns," as used in this agreement is a legal term with a technical meaning. *Ensor v. Wehland, supra* at 491. It is obvious that where the parties intended that the rights were to pass to the personal representatives, the relevant phrase was included, and where they intended the obligation to be personal and to cease upon the death of the optionor, it was omitted.

Appellant argues that the inclusion of the phrase, "heirs and assigns" when referring to the optionor might have violated the rule against perpetuities and we agree. *See Commonwealth Realty Corporation v. Bowers*, 261 Md. 285, 274 A. 2d 353 (1971). That does not mean, however, that had the parties so intended, an agreement could not have been drawn which neither violated the rule against perpetuities nor terminated at the death of the optionor. *See*, for example, *Peterson v. Olson*, 253 Iowa 469, 112 N.W.2d 874 (1962), where the parties executed a twenty-year option without making reference to the heirs and assigns of the optionor. The Iowa Court held that plain intent was shown

by the establishment of a definite time limit within which the optionee could purchase the land and thus, the death of the optionor would not terminate the agreement.

In *Ensor v. Wehland, supra,* the Court of Appeals considered an agreement very similar to the one at bar. The Court held that the contract bound the optionor, not her heirs or personal representatives, and the option terminated at her death so long as she had not made the decision to sell during her lifetime. The appellant argues at some length that the agreement in *Ensor v. Wehland, supra,* required the optionor to make a personal decision to sell before the optionee could purchase, and no such personal decision was required in the case at bar. We are unable to see the distinction. It appears to us that the court in *Ensor* held the agreement required a personal decision because of the omission to make the agreement binding on the heirs and personal representatives of the optionor just as in the instant case. Under either agreement, the decision could just as well have been made by the personal representatives provided the agreement showed an intent that they should be bound thereby.

Our decision is supported by cases in other states. *Mercer v. Lemmens, supra, Old Mission Peninsula School District v. French, supra.*

As we have previously noted, the trial judge sustained the demurrer to the bill of complaint and directed that it be dismissed. We do not think the procedure was proper. Inasmuch as the facts are not in dispute and the intention of the parties is clear on the face of the written agreement the trial judge should have declared the law. In *Logan v. Town of Somerset,* 271 Md. 42, 45-46, 314 A. 2d 436 (1974), the Court said:

> "We have concluded that the chancellor should have rendered declarations in regard to the matters for which declaratory relief was sought, rather than obliquely incorporating his opinion on these questions into the preliminary recitation of the decree and then *dismissing* the amended bill of

complaint. Since we are, however, of the opinion that inasmuch as the facts are not in dispute — being stipulated — and further that Judge Moore's conclusions given in his oral opinion on the various matters for which declaratory relief was sought are correct, we will formulate the appropriate declarations in this opinion, modify the decree of April 18, 1973, by striking out the dismissal of the bill of complaint and substituting the declarations set forth in this opinion in lieu of that dismissal, and affirm the decree as modified."

For similar cases, *see also Donnelly Advertising Corporation of Maryland v. Mayor and City Council of Baltimore,* 279 Md. 660, 370 A. 2d 1127 (1977), and *Urbana Civic Association v. Frederick County,* 23 Md. App. 49, 325 A. 2d 755 (1974). Under these cases, it is apparent to us that the decree of the trial court should have incorporated the views expressed in his opinion with which we concur.

> *Decree vacated.*
>
> *Case remanded for passage of a decree in accordance with this opinion.*
>
> *Costs to be paid by the appellant.*