536 A.2d 1137

**FERRERO CONSTRUCTION COMPANY**

v.

**DENNIS ROURKE CORPORATION**

**No. 139, Sept. Term, 1985.**

Court of Appeals of Maryland.

Feb. 10, 1988.

Motion for Reconsideration Denied March 24, 1988.

Robert C. Park, Jr. (Michael J. Gugerty and Linowes & Blocher, on the brief), Silver Spring, for appellant.

Marilyn J. Brasier (Thomas J. Walker, Jr., on the brief), Rockville, for appellee.

Before MURPHY, C.J., and SMITH *, ELDRIDGE, COLE, RODOWSKY, COUCH* and McAULIFFE, JJ.

ELDRIDGE, Judge.

The principal question in this case is whether the Rule Against Perpetuities applies to a right of first refusal to purchase an interest in property.

The pertinent facts are as follows. On April 27, 1981, the plaintiff Dennis Rourke Corp. and the defendant Ferrero Construction Co. entered into a contract for the purchase of two lots on Mercy Court in Montgomery County, Maryland. This contract contained the following clause:

"In consideration of this contract, the Seller [Ferrero] agrees to extend to the Purchaser [Rourke] a first right of refusal on the future sale of any of the seven lots remaining on Mercy Court."

Rourke never recorded this contract. Settlement under the contract apparently occurred in May 1981.

On March 12, 1984, Ferrero notified Rourke by mail of a third party offer to purchase Lot 27, one of the remaining lots on Mercy Court.[1] The letter contained the terms of the third party's offer and afforded Rourke the opportunity "to submit a contract" by March 21, 1984, for it "to be considered."[2] Rourke immediately stated that it was exercis-

---

* Smith and Couch, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

1. On March 6, 1984, Ferrero had received a third party offer to purchase Lot 21 on Mercy Court. Ferrero notified Rourke of the offer to purchase Lot 21, but Rourke declined to exercise its right of first refusal as to that lot.

2. In full, Ferrero's letter stated as follows:
"We have in hand an acceptable contract for the sale of Lot 27, Block 2, McAuley Park. The essential data is as follows:

ing its right of first refusal and requested that Ferrero provide a copy of the third party's offer so that Rourke could prepare a contract with identical terms and conditions.[3]  On March 21, 1984, Rourke received a copy of the third party's offer.  The next day, Rourke submitted a contract that in its essential terms conformed to the third party's offer.  Subsequently, Rourke stated that it was prepared to settle on April 24, 1984.  Ferrero responded that it had decided to reject both offers and that it would not appear at settlement.  Ferrero in fact did not appear at the settlement and, on April 26, 1984, returned both offers, unsigned.

Rourke brought this action for specific performance in the Circuit Court for Montgomery County.  In the first count of its amended complaint, Rourke claimed that it was entitled to a conveyance of Lot 27 by virtue of its exercise of the right of first refusal.  In the second count, Rourke alleged that, independent of the exercise of the right of first refusal, Ferrero and Rourke had agreed upon a contract for the purchase and sale of Lot 27.

At trial, after the conclusion of Rourke's case, the trial court granted Ferrero's motion for judgment on count one, ruling that Rourke's right of first refusal violated the Rule Against Perpetuities and was, consequently, void.  As to

---

| | |
|---|---|
| Deposit: | $5,000.00 |
| Settlement: | 30 days |
| Contract amount: | $70,000.00 |
| Terms: | All cash |

Please let us know whether you intend to submit a contract on this parcel.  If you do submit a contract, it must be in our hands by March 21, 1984 in order to be considered."

**3.**  In full, Rourke's response was as follows:
"Pursuant to your notification of March 12, 1984, please be advised of my intent to exercise my 'first right of refusal' on Lot 27, Block 2 of McAuley Park Subdivision.  As I have indicated from the beginning, it has always been my intention to build out the balance of Mercy Court.
"If you would be kind enough to provide me with a copy of your contract on Lot 27, I will prepare my contract with exactly the same terms and conditions as the offer you now have."

the second count, after the presentation of all of the evidence, the trial court held that Ferrero's letter of March 12, 1984, constituted an offer and that Rourke accepted the offer by stating its intent to exercise the right of first refusal. Nevertheless, the court ruled that Ferrero's offer was premised on the parties' mistaken belief that the right of first refusal was valid. Consequently, the court concluded that the parties had not formed a contract, as both had proceeded under a mutual mistake of law.

The Court of Special Appeals reversed on the ground that the Rule Against Perpetuties was inapplicable and that the right of first refusal was valid. *Dennis Rourke Corp. v. Ferrero Constr. Co.*, 64 Md.App. 694, 498 A.2d 689 (1985). Although in *Iglehart v. Jenifer,* 35 Md.App. 450, 452–453, 371 A.2d 453 (1977), the Court of Special Appeals had assumed that the Rule Against Perpetuities applied to rights of first refusal, the court in this case expressly held the Rule inapplicable to such rights. The intermediate appellate court also indicated its view that the parties had entered into an independent contract for the purchase and sale of Lot 27. Thereafter, we granted Ferrero's petition for a writ of certiorari.[4]

I.

Subject to a few statutory exceptions, the common law Rule Against Perpetuities remains in effect in Maryland. Maryland Code (1974), § 11–102 to –103 of the Estates and Trusts Article. *See also* Code (1974), § 4–409 of

---

**4.** From the outset of this case, both parties and both courts below have proceeded as though Rourke would be entitled to specific performance if the right of first refusal in the 1981 contract did not violate the Rule Against Perpetuities. Thus, the parties and the lower courts assumed that Ferrero had made an actual decision to sell Lot 27 so as to activate Rourke's right of first refusal. *See Straley v. Osborne,* 262 Md. 514, 522, 523, 278 A.2d 64 (1971); VI *American Law of Property* § 26.65, at 507 (1952). Moreover, the parties and the lower courts assumed that the right of first refusal required Rourke to submit a bid that equaled a third party's offer rather than market price. For purposes of this case, we shall proceed as though these assumptions are valid.

the Estates and Trusts Article. In *Fitzpatrick v. Mer.-Safe, Etc. Co.*, 220 Md. 534, 541, 155 A.2d 702, 705 (1959), this Court adopted Professor Gray's formulation of the Rule Against Perpetuities: " '[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' " Gray, *The Rule Against Perpetuities*, § 201 (4th ed. 1942). The *Fitzpatrick* Court described the Rule Against Perpetuities as follows (220 Md. at 541, 155 A.2d 702):

"It is a rule of law, not one of construction, and it applies to legal and equitable estates of both realty and personalty. It is not a rule that invalidates interests which last too long, but interests which vest too remotely; in other words, the Rule is not concerned with the duration of estates, but the time of their vesting."

## A.

The vast majority of courts and commentators have held that rights of first refusal, which are more commonly known as "preemptive rights," are interests in property and not merely contract rights. 5A *Powell on Real Property*, ¶ 771[2] (1987). *See also Westpark Inc. v. Seaton Land Co.*, 225 Md. 433, 449–450, 171 A.2d 736, 743 (1961). This is so because, if the property owner attempts to sell to someone other than the owner of the right of first refusal ("the preemptioner"), the latter may have a court of equity enter a decree of specific performance ordering that the property be conveyed to him. 5A *Powell on Real Property, supra*, ¶ 711[1], n. 9. Thus, the preemptioner acquires an equitable interest, which will vest only when the property owner decides to sell. *See* Note, *Real Property—Pre-emptive Right or Right of Refusal—Violative of The Rule Against Perpetuities?*, 40 Mo.L.Rev. 389, 391–392 (1975) (a right of first refusal "is in the nature of a springing executory interest").

As rights of first refusal are interests in property, the great majority of American jurisdictions have applied the Rule Against Perpetuities to such rights. *See, e.g., Estate*

*of Johnson v. Carr,* 286 Ark. 369, 691 S.W.2d 161 (1985); *Taormina Theosophical Community, Inc. v. Silver,* 140 Cal.App.3d 964, 977, 190 Cal.Rptr. 38, 46 (1983); *Atchison v. City of Englewood,* 170 Colo. 295, 307–308, 463 P.2d 297, 303 (1970); *Neustadt v. Pearce,* 145 Conn. 403, 143 A.2d 437 (1958); *Watergate Corp. v. Reagan,* 321 So.2d 133 (Fla.App. 1975); *Martin v. Prairie Rod & Gun Club,* 39 Ill.App.3d 33, 348 N.E.2d 306 (1976); *Weitzmann v. Weitzmann,* 87 Ind.App. 236, 242, 161 N.E. 385, 387 (1928); *Henderson v. Millis,* 373 N.W.2d 497, 505 (Iowa 1985); *Barnhart v. McKinney,* 235 Kan. 511, 682 P.2d 112 (1984); *Three Rivers Rock Co. v. Reed Crushed Stone Co.,* 530 S.W.2d 202, 208 (Ky.1975); *Old Mission Peninsula School Dist. v. French,* 362 Mich. 546, 549, 107 N.W.2d 758, 759 (1961); *Beets v. Tyler,* 365 Mo. 895, 903, 290 S.W.2d 76, 82 (1956); *Davies v. McDowell,* 549 S.W.2d 619 (Mo.App.1977); *North Bay Council Inc. v. Grinnell,* 123 N.H. 321, 461 A.2d 114 (1983); *Ross v. Ponemon,* 109 N.J.Super. 363, 370, 263 A.2d 195, 199 (1970); *Peele v. Wilson Co. Bd. of Educ.,* 56 N.C.App. 555, 560–561, 289 S.E.2d 890, 893–894, *petition denied,* 306 N.C. 386, 294 S.E.2d 210 (1982); *Melcher v. Camp,* 435 P.2d 107 (Okla.1967); *Hale v. Scanlon,* 88 Pa.D. & C. 506, 508 (1953); *Clark v. Shelton,* 584 P.2d 875, 876–877 (Utah 1978); *Skeen v. Clinchfield Coal Corp.,* 137 Va. 397, 402, 119 S.E. 89, 90 (1923); *Smith v. VanVoorhis,* 296 S.E.2d 851, 853–854 (W.Va.1982). *Cf. Hall v. Crocker,* 192 Tenn. 506, 510, 241 S.W.2d 548, 549–560 (1951) (option on condition precedent to repurchase if grantee either died or wished to sell held subject to Rule Against Perpetuities); *Smith v. Mitchell,* 301 N.C. 58, 66, 269 S.E.2d 608, 613 (1980) (whether a right of first refusal constitutes an unreasonable restraint on alienation depends, *inter alia,* on whether the duration of the right is greater than the period of the Rule Against Perpetuities).

In addition, the Restatement has adopted the majority position. IV Restatement of Property § 413 comment e (1944). *See also Iglehart v. Jenifer, supra,* 35 Md.App. at 452–453, 371 A.2d 453; Note, *Real Property—Preemptive*

*Right or Right of First Refusal—Violative of the Rule Against Perpetuities?, supra,* 40 Mo.L.Rev. at 391–392; 5A *Powell on Real Property, supra,* ¶ 771[2] ("Options to purchase or to repurchase land, unconnected with a lease, commonly denominated options in gross, have generally been held bad under the common law rule against perpetuities, when not restricted in duration so as to comply with the permissible period under that rule") (collecting right of first refusal cases); 4A *Thompson on Real Property,* § 2020, at 655 (1979 Repl. Vol.); L. Simes & A. Smith, *The Law of Future Interests,* § 1154, at 61 (2d ed. 1956) (rights of first refusal are "normally subject to the rule against perpetuities").

In light of this widespread acceptance of the majority view, we should hesitate before attempting to fashion an exception to the Rule Against Perpetuities for rights of first refusal. In this area of property law, vested rights and settled expectations are at stake. A departure from settled law might introduce doubt as to the value of vested rights. Moreover, the contours of an exception for rights of first refusal might prove difficult to define. Consequently, the policies favoring certainty and stability strongly support our following the majority of courts and applying the Rule Against Perpetuities to rights of first refusal.

A right of first refusal is a type of option. IV Restatement of Property, *supra,* § 413 comment b (rights of first refusal are "analogous to options on a condition precedent"). *See Ensor v. Wehland,* 243 Md. 485, 487–488, 221 A.2d 699 (1966); *Westpark, Inc. v. Seaton and Co., supra,* 225 Md. at 445, 171 A.2d 736; *Iglehart v. Jenifer, supra,* 35 Md.App. at 451 n. 1, 371 A.2d 453. Again, the majority rule, in England as well as in this country, is that the Rule Against Perpetuities generally applies to options. *Commonwealth Realty v. Bowers, supra,* 261 Md. 285, 302–303, 274 A.2d 353, and authorities cited there; IV Restatement of Property, *supra,* § 393. In the area of options, courts in the 300 years since the High Court of Chancery decided the *Duke of Norfolk's Case,* 3 Ch. Cas. 1, 22 Eng.Rep. 931

(1681), have developed three exceptions to the Rule Against Perpetuities. The Rule does not apply to a lessee's option to renew a lease, *Bridges v. Hitchcock,* 5 Br.P.C. 6, 2 Eng.Rep. 498 (1715); IV Restatement of Property, *supra,* § 395(b). It does not apply to a lessee's option to purchase all or part of the leased premises, IV Restatement of Property, *supra,* § 395(a); *Hollander v. Central Metal & Supply Co.,* 109 Md. 131, 71 A. 442 (1908). And it is inapplicable to a usufructuary's option to extend the scope of an easement or profit, IV Restatement of Property, *supra,* §§ 393 comment j, 399. *See generally,* 5A *Powell on Real Property, supra,* ¶ 771[2]. All options may violate the Rule Against Perpetuities. Nevertheless, courts have justified these three narrow exceptions because these three types of options yield social benefits that offset the consequences of that violation. *Ibid.*

In urging us to exempt rights of first refusal from the Rule Against Perpetuities, Rourke would have us undertake such a balancing process. Again, however, it is significant that a majority of courts have struck the balance against creating the exception Rourke seeks.

B.

We recognize that a minority of courts have held the Rule Against Perpetuities inapplicable to certain rights of first refusal. *Cambridge Co. v. East Slope Investment Corp.,* 700 P.2d 537, 542 (Colo.1985); *Shiver v. Benton,* 251 Ga. 284, 304 S.E.2d 903, 906–907 (1983); *Metropolitan Transp. Auth. v. Bruken Realty Corp.,* 67 N.Y.2d 156, 492 N.E.2d 379, 384, 501 N.Y.S.2d 306, 311 (1986); *Forderhause v. Cherokee Water Co.,* 623 S.W.2d 435, 438–439 (Tex.Civ. App.1981), *rev'd on other grounds,* 641 S.W.2d 522 (Tex. 1982); *Robroy Land Co. v. Prather,* 95 Wash.2d 66, 622 P.2d 367, 369–371 (1980); *Weber v. Texas Co.,* 83 F.2d 807, 808 (5th Cir.), *cert. denied,* 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413 (1936). *See also Hartnett v. Jones,* 629 P.2d 1357, 1362–1363 (Wyo.1981). This minority view appears to stem from a law review article written in 1935 by Professor

Merrill I. Schnebly. Schnebly, *Restraints Upon the Alienation of Legal Interests: III*, 44 Yale L.J. 1380, 1390–1395 (1935). Professor Schnebly was the editor of the section of the *American Law of Property* which relates to this issue and which adopts the same view. VI *American Law of Property*, § 26.67 (1952). The Court of Special Appeals in the present case, and many of the other cases reaching the same conclusion, rely on Professor Schnebly's writings. *See, e.g., Dennis Rourke Corp. v. Ferrero Constr. Co.*, 64 Md.App. 694, 703, 498 A.2d 689 (1985); *Shiver v. Benton*, 251 Ga. 284, 304 S.E.2d 903, 906 (1983); *Robroy Land Co. v. Prather*, 95 Wash.2d 66, 622 P.2d 367, 369 (1980). In fact, the relatively few cases espousing the minority view all arose after the publication of Professor Schnebly's article in 1935. We reiterate that, in this area of the law, where certainty and stability are important values, it is undesirable to adopt such a recent and minority position.

Moreover, most of the cases adopting the minority position involve unique interests in land, rather than the traditional fee estate involved in this case. For example, *Weber v. Texas Co.*, 83 F.2d 807 (5th Cir.), *cert. denied*, 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413 (1936), *Producers Oil Co. v. Gore*, 610 P.2d 772 (Okla.1980), and *Forderhause v. Cherokee Water Co.*, 623 S.W.2d 435 (Tex.Civ.App.1981), *rev'd on other grounds*, 641 S.W.2d 522 (Tex.1982), all involve rights of first refusal in connection with oil, gas, and mineral leases. As the Supreme Court of Oklahoma stated in the *Producers Oil* case (610 P.2d at 774):

> "Mineral leases and their accompanying operating agreements have built in duration. Oil and gas production cannot last indefinitely and rights are always terminable.... [T]he provision for preemptive rights ... can last only as long as the agreement and the lease itself continu[e]." [5]

---

5. In addition, in *Producers Oil Co., supra,* the owner of the mineral rights and the lessee owned reciprocal rights of first refusal to purchase each other's interest. Thus, the court concluded that these

In *Cambridge Co. v. East Slope Investment Corp.*, 700 P.2d 537, 542 (Colo.1985), the court held that the Rule Against Perpetuities did not apply to rights of first refusal contained in a condominium declaration. Condominium ownership was a form of property interest unknown to the earlier common law. Thus, an exception for rights of first refusal to purchase this specialized type of property interest has little bearing on whether rights of first refusal in general should be exempt from the Rule Against Perpetuities.

In *Metropolitan Transp. Auth. v. Bruken Realty Corp.*, 67 N.Y.2d 156, 492 N.E.2d 379, 384, 501 N.Y.S.2d 306, 311 (1986), the Court of Appeals of New York held that, in commercial and governmental transactions, it would not assess the validity of a right of first refusal under the Rule Against Perpetuities. Again, however, that case involved a unique transaction. The right at issue arose out of the State of New York's buyout of the bankrupt Long Island Railroad, a transaction that the trial court described as "thoroughly *sui generis.*" *Metropolitan Transp. Auth. v. Bruken Realty Corp.*, 125 Misc.2d 497, 479 N.Y.S.2d 646, 655 (1984). Thus, it would again seem that an exception for a right of first refusal in a transaction such as this should have little bearing on whether rights of first refusal in general should be exempt from the Rule Against Perpetuities.

The Court of Special Appeals in the present case and other courts adopting the minority view reach their conclusion by assuming that the sole policy underlying the Rule Against Perpetuities is the elimination of restraints on alienation. *See, e.g., Dennis Rourke Corp. v. Ferrero Constr. Co., supra,* 64 Md.App. at 704, 498 A.2d 689; *Forderhause v. Cherokee Water Co., supra,* 623 S.W.2d at

---

rights fell within the well-established exception to the Rule Against Perpetuities for options to purchase that are contained within a lease. 610 P.2d at 775–776. *See* Restatement of Property, *supra,* § 395; *Hollander v. Central Metal Supply Co.,* 109 Md. 131, 71 A. 442 (1908).

438–439; *Robroy Land Co. v. Prather, supra,* 95 Wash.2d 66, 622 P.2d at 370; *Hartnett v. Jones,* 629 P.2d 1357, 1361 (Wyo.1981); *Weber v. Texas Co., supra,* 83 F.2d at 808. Thus, in effect, the minority view postulates that an interest should not be subject to the Rule unless the interest constitutes a restraint on alienation. The minority view then distinguishes rights of first refusal from ordinary options. As stated in VI *American Law of Property, supra,* § 26.64, at 507:

"An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone."

Based on this distinction, the minority view contends that, unlike ordinary options, at least some rights of first refusal do not restrain alienation; consequently, the minority view concludes that such rights of first refusal should not be subject to the Rule Against Perpetuities. VI *American Law of Property, supra,* § 26.67, at 511–512; *Dennis Rourke Corp. v. Ferrero Constr. Co., supra,* 64 Md.App. at 704, 498 A.2d 689; *Cambridge Co. v. East Slope Investment Corp., supra,* 700 P.2d at 542; *Shiver v. Benton, supra,* 251 Ga. 284, 304 S.E.2d at 906; *Forderhause v. Cherokee Water Co., supra,* 623 S.W.2d at 439; *Robroy Land Co. v. Prather, supra,* 95 Wash.2d 66, 622 P.2d at 369–371; *Weber v. Texas Co., supra,* 83 F.2d at 808. *See also Metropolitan Transp. Auth. v. Bruken Realty Corp., supra,* 67 N.Y.2d 156, 492 N.E.2d 379, 385, 501 N.Y.S.2d 306, 312.

■ Even assuming the validity of the distinction between rights of first refusal and other options, the minority

view errs in assuming that an interest should not be subject to the Rule unless the interest constitutes a restraint on alienation. In making this assumption, courts adopting the minority view confuse the Rule Against Perpetuities with the rule against unreasonable restraints on alienation. Admittedly, both rules belong to "a family of related rules that regulate the devolution of wealth from generation to generation." R. Lynn, *The Modern Rule Against Perpetuities* 9 (1966). These two rules are nonetheless distinct. The Rule Against Perpetuities prevents property interests from vesting remotely. J. Gray, *The Rule Against Perpetuities* 3–4 (4th ed. 1942); L. Simes, *The Law of Future Interests*, § 120, at 253 (2d ed. 1966). *See Safe Deposit & Trust Co. v. Sheehan*, 169 Md. 93, 106, 179 A. 536, 542 (1935). The rule against restraints on alienation, on the other hand, prevents grantors from unreasonably depriving grantees of the power to alienate their estates. *See* Restatement (Second) Property (Donative Transfers) Intro. Note, Pt. II, at 143; *Three Rivers Rock Co. v. Reed Crushed Stone Co.*, 530 S.W.2d 202, 205 (Ky.1975).

The policies underlying these two rules are likewise not identical. Obviously, the rule against restraints on alienation serves to facilitate the alienability of property. Similarly, one of the purposes of the Rule Against Perpetuities is to facilitate the alienability of property. *See Commonwealth Realty v. Bowers, supra,* 261 Md. at 297, 274 A.2d 353; *Hollander v. Central Metal & Supply Co., supra,* 109 Md. at 159, 71 A. 442. Contrary to the minority view, however, the Rule Against Perpetuities is not simply a rule against restraints on alienation. L. Simes, *supra,* § 120, at 253. Instead, the Rule Against Perpetuities is concerned with restrictions that render title uncertain. *See* 2 H. Tiffany, *The Law of Real Property*, § 392 (3d ed. 1939). Without the Rule Against Perpetuities, it would be possible at some distant point for a remotely vesting future interest to divest the current owner's estate. Because of this threat of divestment, the owner might be deterred from making the most effective use of the property, even if he never has

any desire to alienate his estate. Thus, by voiding certain remotely vesting future interests, the Rule Against Perpetuities eliminates this deterrent both for owners who wish to alienate their estates and for owners who have no intention of ever doing so. *See* 2 H. Tiffany, *The Law of Real Property, supra,* § 392. Consequently, from the standpoint of the Rule Against Perpetuities, it is irrelevant whether a particular future interest imposes a light burden, a heavy burden, or no burden at all upon the alienability of property. *See Smith v. VanVoorhis,* 296 S.E.2d 851, 854 n. 3 (W.Va.1982). *See also* IV Restatement of Property, *supra,* § 413.

## C.

Even if the minority view were correct that an interest should not be subject to the Rule Against Perpetuities unless that interest constitutes a restraint on alienation, we would disagree that rights of first refusal should not be subject to the Rule. In our opinion, rights of first refusal do restrain the alienability of property. In this respect, however, it is necessary first to distinguish among the various types of rights of first refusal.

Some rights of first refusal permit the right's owner to purchase property at a fixed price if the property owner, his heirs, or assigns should ever desire to sell. Plainly a right of first refusal at a fixed price inhibits alienability. Often, with the passage of time, the fixed price will bear no relationship to the property's actual market value. *See, e.g., Peele v. Wilson Co. Bd. of Educ.,* 56 N.C.App. 555, 289 S.E.2d 890, *petition denied,* 306 N.C. 386, 294 S.E.2d 210 (1982) (property owner had received bid at $4,300, while right of first refusal would have permitted heirs to pay only $50). Because the owner must often offer the property to the preemptioner at an artificially low price, the owner is deterred from selling the property or from increasing its value by making improvements. Consequently, even the minority view acknowledges that the Rule Against Perpetu-

ities should apply to rights of first refusal at a fixed price. VI *American Law of Property, supra,* § 26.67, at 510.

A second type of right of first refusal permits the preemptioner to purchase the property at "market value" if the owner, his heirs or assigns should ever desire to sell. Some authorities would find the Rule Against Perpetuities inapplicable to such a right. *Metropolitan Transp. Auth. v. Bruken Realty Corp., supra,* 67 N.Y.2d 156, 492 N.E.2d 379, 501 N.Y.S.2d 306; VI *American Law of Property, supra,* § 26.67, at 511. Nevertheless, a right of first refusal to purchase at market value also effects a substantial restraint on alienability. A potential purchaser's offer might, in the preemptioner's opinion, exceed market value. The preemptioner could then contend that he need pay only some lesser amount. Fearing that a determination of the parties' rights would have to await the uncertain outcome of litigation, a prospective purchaser might be deterred from ever making an initial offer. 40 A.L.R.3d 920, 927 (1970).

The third type of right of first refusal permits the preemptioner to purchase the property at a price equal to any bona fide offer that the owner, his heirs or assigns desire to accept. In this situation, however, many prospective purchasers, recognizing that a matching offer from the preemptioner will defeat their bids, simply will not bid on the property. This in turn will depress the property's value and discourage the owner from attempting to sell. Moreover, even a right of first refusal tied to a bona fide offer may constitute an unreasonable restraint on alienation if the right is of unlimited duration. *See* Restatement of Property, *supra,* § 406 comment i.[6] Similarly, if, as in this case,

---

6. The Court of Special Appeals concluded that Rourke's right of first refusal did not constitute an unreasonable restraint on alienation under IV Restatement of Property, *supra,* § 406. Section 406, the general rule on unreasonable restraints on alienation, expressly states that its provisions are subject to IV Restatement of Property, *supra,* § 413. Section 413 provides that a right of first refusal is not an unreasonable restraint on alienation "unless it violates the rule against

the right of first refusal is unrecorded, the task of ascertaining and locating the holder of the preemptive right at some remote point in the future might also become so difficult that the right of first refusal could constitute an unreasonable restraint on alienation. *Atchison v. City of Englewood*, 170 Colo. 295, 307–308, 463 P.2d 297, 303 (1970).

Thus, contrary to the minority view, we conclude that rights of first refusal restrain alienation.

### D.

Finally, as indicated earlier, the General Assembly has recognized by statute a limited number of exceptions to the common law Rule Against Perpetuities. Code (1974), § 11–102 to –103 of the Estates and Trusts Article. *See also* Code (1974), § 4–409 of the Estates and Trusts Article. In this case, however, the Court of Special Appeals undertook to create an additional exception. When the legislature has expressly enumerated certain exceptions to a principle, courts normally should be reluctant thereafter to create additional exceptions. *Cf. Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 156, 416 A.2d 734, 737 (1980), and cases there cited.

For all of the foregoing reasons, we hold that the Court of Special Appeals erred in adopting the minority view in this case. We choose to follow the majority of courts that apply the Rule Against Perpetuities to rights of first refusal.

### E.

It remains to assess the validity of Rourke's right of first refusal under the Rule Against Perpetuities.

We first observe that Rourke's right of first refusal was not limited to a term of years but was of unlimited duration.

---

perpetuities." Thus, § 413 and not § 406 contains the final word as to the reasonableness of rights of first refusal. Nevertheless, the Court of Special Appeals did not assess Rourke's right of first refusal under § 413.

*Compare Westpark, Inc. v. Seaton Land Co., supra,* 225 Md. 433, 171 A.2d 736. Moreover, in this case, the right was conveyed between two corporations, which theoretically have a perpetual existence. Thus, under the conveyance as drafted, the right of first refusal might vest well beyond the period of some life in being plus twenty-one years that is prescribed in the Rule.[7] Consequently, the circuit court correctly held that the right of first refusal in this case violated the Rule Against Perpetuities and, therefore, was unenforceable.

## II.

As mentioned early in this opinion, Rourke also sought specific performance on the theory that the March 1984 correspondence between the parties, in connection with the purported exercise of the invalid right of first refusal, itself created a contract for the purchase of Lot 27. The March 12, 1984, letter from Ferrero to Rourke was as follows:

"We have in hand an acceptable contract for the sale of Lot 27, Block 2, McAuley Park. The essential data is as follows:

| Deposit: | $5,000.00 |
| Settlement: | 30 days |
| Contract amount: | $70,000.00 |
| Terms: | All cash |

Please let us know whether you intend to submit a contract on this parcel. If you do submit a contract, it must be in our hands by March 21, 1984 in order to be considered."

In response to this letter, Rourke stated that it was exercising its right of first refusal, and thereafter Rourke submitted a contract to Ferrero. Ferrero then stated that it had decided to reject both offers.

---

7. Corporations such as Rourke and Ferrero cannot be used as measuring lives for purposes of the Rule Against Perpetuities. *Fitchie v. Brown,* 211 U.S. 321, 334, 29 S.Ct. 106, 110, 53 L.Ed. 202 (1908); L. Simes & A. Smith, *supra,* § 1223, at 108.

The actions of the parties in March 1984, at most, constituted simply a first-step towards compliance with the right of first refusal contained in the 1981 contract. Nevertheless, both the trial court and the Court of Special Appeals believed that this March 1984 correspondence independently created a contract for the purchase of Lot 27. Both courts below were apparently of the view that, whenever the parties to a prior contractual right of first refusal act to implement that right, their actions should be deemed to constitute an independent offer and acceptance even if the right of first refusal was invalid under the Rule Against Perpetuities. The trial court, however, did not grant relief on the basis of an independent contract because of its holding that there was a mutual mistake. The Court of Special Appeals, in light of its holding that the right of first refusal was valid, did not have to reach the matter of an independent contract.

In our view, the mere initial implementation by both parties, as in this case, of a right of first refusal which is invalid under the Rule Against Perpetuities, does not itself create a contract to sell the property. To hold otherwise would negate the applicability of the Rule Against Perpetuities and contravene the policy underlying the Rule.

Of course, if the parties go beyond the initial steps of merely complying with the prior right of first refusal, and engage in conduct creating a new contract for the sale of property, that contract will be enforced. The parties' actions in this case, however, were not of this character. Ferrero's letter of March 12, 1984, was clearly not an independent offer to sell Lot 27. The letter was, at most, the taking of the initial step under the 1981 right of first refusal. Moreover, the language of the March 12, 1984, letter represents only an effort to solicit an offer from Rourke. The letter requests information as to whether Rourke "intend[ed] to submit a contract." In addition, the March 12th letter states that Rourke's contract had to be in Ferrero's hands by March 21, 1984, "in order to be *considered.*" The letter thus suggests that Ferrero intended

only to learn whether Rourke would "submit" an offer/"contract" which Ferrero might "consider" accepting. An invitation to submit an offer is not itself an offer; the submission of an offer, pursuant to the invitation, is not an acceptance. *See Rofra Inc. v. Board of Education,* 278 Md. 102, 358 A.2d 562 (1976), *aff'g,* 28 Md.App. 538, 346 A.2d 458 (1975); Restatement (Second) of Contracts § 26 comment d; 1 *Williston on Contracts,* § 27 (3d ed. 1957).

Under the circumstances of this case, Rourke's subsequent actions could not constitute an acceptance. At best, Rourke's submission of a "contract" was the initial offer. Ferrero, however, never accepted that offer, as it returned the "contract" unsigned and stated that it did not intend to sell Lot 27.

In light of our holding, we do not reach the trial court's "mutual mistake of law" theory.[8]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. RESPONDENT TO PAY COSTS.

---

**8.** It is not clear, however, that a mistake of law such as that which was found to have occurred in this case would be grounds for relief in Maryland. *Prince de Bearn v. Winans,* 111 Md. 434, 477, 74 A. 626, 634 (1909) ("[M]oney paid, with a full knowledge of all the facts of the case, under a mistaken conception of the law cannot be recovered back in an action at law.... Nor will contracts resting upon a proper consideration fairly made with a full knowledge of the facts under a mistake or ignorance of the law, be set aside in equity in the absence of special grounds of equitable relief."). *See also Sibert v. McAvoy,* 15 Ill. 106, 109 (1853); Restatement of Restitution § 7 (1937); 13 *Williston on Contracts,* § 1549, at 135 (3d ed. 1970). *Compare Atchison v. City of Englewood,* 193 Colo. 367, 372, 568 P.2d 13 (1977); *Dover Pool & Racquet Club, Inc. v. Brooking,* 366 Mass. 629, 632–634, 322 N.E.2d 168 (1975); *Peterson v. First National Bank of Ceylon,* 162 Minn. 369, 375, 203 N.W. 53 (1925); *Rosenblum v. Manufacturers Trust Co.,* 270 N.Y. 79, 84–85, 200 N.E. 587 (1936); Restatement (Second) of Contracts § 151 comment b (1981); E. Farnsworth, *Contracts,* § 9.2, at 649 (1982).

COLE, Judge, dissenting.

Because the policies underlying the Rule Against Perpetuities are not furthered by its application in this case and because the right of first refusal in this case is not violative of the Rule Against Unreasonable Restraints on Alienation, I respectfully dissent.

The most commonly recognized definition of the Rule Against Perpetuities, which we have previously adopted, was set forth by Professor Gray: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." J. Gray, *The Rule Against Perpetuities* § 201 (4th ed. 1942); *see also Commonwealth Realty Corp. v. Bowers,* 261 Md. 285, 296, 274 A.2d 353, 358 (1971). The Rule Against Perpetuities, judicially created in *Duke of Norfolk's Case,* 3 Ch.Cas. 1, 22 Eng.Rep. 931 (1681), has survived several centuries notwithstanding that it often frustrates and annoys both lawyers and their clients. This frustration occurs because the rule voids all contingent interests in property that do not vest within the time period provided by the rule. Therefore, when the rule is applied, it purposefully thwarts the express intent of the testator, settlor, donor, or contracting parties by destroying the contingent property right created. *Murphy v. Mercantile–Safe Deposit & Trust Co.,* 236 Md. 282, 290, 203 A.2d 889, 893 (1964). Recognizing this problem this Court should hesitate to invalidate interests in property, especially those that have evolved from a bargained-for exchange, for no better reason than that the Rule Against Perpetuities dictates such a result. Accordingly, I decline to endorse the majority approach which mechanically applies the rule. Instead, I believe the Court should apply the rule only when necessary to preserve its underlying policies.

The underlying policies of the Rule Against Perpetuities are to "preserve the freedom of alienation, and to prevent restrictions on the circulation of property." *Ryan v. Ward,* 192 Md. 342, 348, 64 A.2d 258, 260 (1949). In other words, if a remotely vesting property interest hinders a property's

alienability, marketability, or development, the interest should be subject to the Rule Against Perpetuities.

In determining if the Rule applies, it is important to distinguish rights of first refusal from options, and to recognize that different types of rights of first refusal exist. The majority suggests that a right of first refusal is a type of option. An option, however, gives the holder the immediate right to tender the purchase price and force the owner to sell. A right of first refusal, on the other hand, does not give the holder the power to require the owner to sell at any time, but instead only requires the owner to offer the property to the holder once the owner has decided to sell. *See Straley v. Osborne*, 262 Md. 514, 521–22, 278 A.2d 64, 68–69 (1971); 6 *American Law of Property* § 26.64 (1952). In addition, the operative document creating a right of first refusal normally dictates whether the holder will exercise the right at a fixed price or a price which reflects true market value. While a fixed price will normally have a negative impact on the alienability of the land, a price reflecting true market value will not.

In this case, the right of first refusal could be exercised only if Rourke agreed to match an acceptable third party offer for the land. As this price should reflect true market value, the alienability and marketability of land is unaffected. Accordingly, although the right may not vest within the time constraints of the Rule Against Perpetuities, there is no need to void the right because such action does not further the policies of the Rule.

The majority argues that the policies underlying the Rule Against Perpetuities are furthered by voiding this right of first refusal. It asserts that although one of the purposes of the Rule Against Perpetuities is to facilitate the alienability of property, the Rule is also concerned with any restrictions that render title uncertain and unmarketable. However, the majority fails to distinguish between these two concerns and does not provide any evidence as to how this right of first refusal renders Ferrero's title uncertain or unmarketable.

The majority states that the great majority of American jurisdictions have applied the Rule Against Perpetuities to rights of first refusal. I believe that several of the cases cited to support this position are distinguishable. In particular, no less than eight [1] of the cases cited involve rights to purchase at a *fixed price.* [2] As previously stated, when the price is fixed, the alienability of the land is clearly affected. However, when the price to be paid is the market value of the land, alienability is no longer affected. Since this case arises from a granting clause which mandates that the selling price shall be equivalent to an acceptable offer from a third party, cases where the selling price is fixed are inapposite.

The majority cites *Barnhart v. McKinney,* 235 Kan. 511, 682 P.2d 112 (1984) to support its argument. In that case the court interpreted the clause granting a right to purchase at a *fixed price* to vest within the time limits prescribed by the Rule Against Perpetuities. However, before engaging in its interpretation of the pertinent language, the court noted that the modern trend is to limit application of the Rule Against Perpetuities, particularly in commercial transactions.

Lives in being have no significance in commercial transactions, nor has the period of twenty-one years. Moreover,

---

1. *See Weitzmann v. Weitzmann,* 87 Ind. App. 236, 242, 161 N.E. 385, 387 (1928); *Barnhart v. McKinney,* 235 Kan. 511, 516–17, 682 P.2d 112, 117 (1984); *Three Rivers Rock Co. v. Reed Crushed Stone Co.,* 530 S.W.2d 202, 205 (Ky.1975); *Old Mission Peninsula School Dist. v. French,* 362 Mich. 546, 548, 107 N.W.2d 758, 759 (1961); *Ross v. Ponemon,* 109 N.J. Super. 363, 366, 263 A.2d 195, 198 (1970); *Peele v. Wilson Co. Bd. of Educ.,* 56 N.C.App. 555, 557, 289 S.E.2d 890, 891, *cert. denied,* 306 N.C. 386, 294 S.E.2d 210 (1982); *Hale v. Scanlon,* 88 Pa. D & C 506, 507 (1953); *Clark v. Shelton,* 584 P.2d 875, 876 (Utah 1978).

2. In some of the cases relied upon by the majority, the courts imply that one element distinguishing options from rights of first refusal is whether the holder of the right can purchase the property at a fixed price or a price at which the owner is willing to sell to a third person. The latter formula would indicate a right of first refusal. *See Smith v. VanVoorhis,* 296 S.E.2d 851, 853 (W.Va.1982) and cases cited therein.

in accordance with standard perpetuities doctrine, when an option is held to be too remote the entire option is struck down, instead of only the excess beyond some permissible shorter period. This is unduly punitive on one party to the advantage of another who may be equally at fault. The usual case involves an option which the option-holder attempts to exercise within a very short period; the Rule Against Perpetuities is seized upon by the owner to escape from his contract on the ground that the option-holder might have exercised the option too remotely—a situation which does not appeal to the common sense of business men or the ethical sense of anyone. Like the late lamented Statute of Frauds, the Rule becomes a destroyer of bargains which in all conscience ought to be performed. *Morris and Leach, The Rule Against Perpetuities,* p. 217 (1956).

*Barnhart,* 235 Kan. at 517, 682 P.2d at 117. *See also Metropolitan Transp. Auth. v. Bruken Realty Corp.,* 67 N.Y.2d 156, 501 N.Y.S.2d 306, 492 N.E.2d 379 (1986). The fair inference to be raised from this quotation is that the court's interpretation of the granting language was influenced by this policy. This is particularly so where the agreements in the controlling document extended to the "heirs, executors, administrators and assigns of the respective parties." *Barnhart,* 235 Kan. at 513, 682 P.2d at 114.

The approach in *Barnhart* was similar to that utilized in *North Bay Council, Inc. v. Grinnell,* 123 N.H. 321, 461 A.2d 114 (1983), also cited by the majority. In *North Bay,* the granting clause provided: "[T]he Grantee and its successors herein shall not sell any part of the property herein conveyed until it shall have first offered it for purchase to the grantor, his heirs or assigns, at the highest price at which they have received a bona fide offer." *Id.* at 322–23, 461 A.2d at 115. After concluding that preemptive rights are subject to the Rule Against Perpetuities the court noted that "the Rule has never been 'remorselessly applied' in this State. Instead, we have been more concerned with carrying out the intent of the testator or grantor in any given case."

*Id.* at 324, 461 A.2d at 116 (citations omitted). Accordingly, the court limited the time period in which the preemptive right could be exercised so that the Rule Against Perpetuities was not violated.

*Beets v. Tyler,* 365 Mo. 895, 290 S.W.2d 76 (1956) is another case cited by the majority which is not completely supportive of the majority position. While the court held that the operative granting provision would not violate the Rule Against Perpetuities, the Court also cited *Weber v. Texas,* 83 F.2d 807 (5th Cir.), *cert. denied,* 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413 (1936), with approval. The majority also cites to several cases from intermediate appellate courts which are not entitled to precedential value before this Court.

There is substantial authority supporting the proposition that the Rule Against Perpetuities should not apply to void rights of first refusal. The leading case in this area is *Weber v. Texas Co., supra,* where the lessee attempted to exercise his preemptive right to purchase the lessor's reserved royalty interest in an oil and gas lease. The lessee's right extended to his heirs and assigns and lasted as long as oil or gas could be produced on the subject land. The lessor refused to honor the lessee's preemptive right and argued that the preemptive right violated the Rule Against Perpetuities. The Fifth Circuit Court of Appeals rejected the lessor's argument and provided the following analysis:

> The rule against perpetuities springs from considerations of public policy. The underlying reason for and purpose of the rule is to avoid fettering real property with future interests dependent upon contingencies unduly remote which isolate the property and exclude it from commerce and development for long periods of time, thus working an indirect restraint upon alienation, which is regarded at common law as a public evil.

> The option under consideration is within neither the purpose of nor the reason for the rule. This is not an exclusive option to the lessee to buy at a fixed price which may be exercised at some remote time beyond the limit of

the rule against perpetuities, meanwhile forestalling alienation. The option simply gives the lessee the prior right to take the lessor's royalty interest at the same price the lessor could secure from another purchaser whenever the lessor desires to sell. It amounts to no more than a continuing and preferred right to buy at the market price whenever the lessor desires to sell. This does not restrain free alienation by the lessor. He may sell at any time, but must afford the lessee the prior right to buy. The lessee cannot prevent a sale. His sole right is to accept or reject as a preferred purchaser when the lessor is ready to sell. The option is therefore not objectionable as a perpetuity.

*Weber,* 83 F.2d at 808 (citations omitted).

Several courts have recently adopted the approach set forth in *Weber. See Cambridge Co. v. East Slope Inv. Corp.,* 700 P.2d 537 (Colo.1985) (en banc); *Shiver v. Benton,* 251 Ga. 284, 304 S.E.2d 903 (1983); *Metropolitan Transp. Auth. v. Bruken Realty Corp.,* 67 N.Y.2d 156, 501 N.Y.S.2d 306, 492 N.E.2d 379 (1986); *Producers Oil Co. v. Gore,* 610 P.2d 772 (Okla.1980); *Forderhause v. Cherokee Water Co.,* 623 S.W.2d 435 (Tex.Civ.App.1981); *aff'd in pertinent part and rev'd on other grounds,* 641 S.W.2d 522 (Tex.1982); *Robroy Land Co. v. Prather,* 95 Wash.2d 66, 622 P.2d 367 (1980); *Hartnett v. Jones,* 629 P.2d 1357 (Wyo.1981); *see also 6 American Law of Property* § 26.67 (1952).

I similarly find the rationale in *Weber* to be persuasive. A right of first refusal is impotent to put property outside the stream of commerce. The holder of a right of first refusal cannot force the owner to sell the property. Nor can the holder prevent a sale once the owner has decided to sell. The holder of the right is limited to either accepting or rejecting the offer when the owner desires to sell. Moreover, because the right of first refusal in this case is not to be exercised at a fixed price, but is instead based on a price the owner is willing to accept from a third party, the right does not discourage the owner from placing improvements

on the property, and the owner is assured of getting the fair market value for his land and added improvements.

Ferrero argues, and the majority agrees, that the outstanding right of first refusal "could discourage prospective developer purchasers from spending time and money for architectural and engineering services, to arrange financing and to negotiate a complicated real estate sales contract, knowing that preemption is possible." [3] The majority concludes that the right restrains the alienability of the land. I disagree.

Prospective buyers always face the risk that their investigatory efforts will be wasted due to unavoidable market forces. A prospective developer might study the property and then conclude that a purchase would not be wise. The prospective buyer might also make an offer that the owner finds too low. Finally, another buyer may come along and offer a higher price. Thus, the risk of investigatory costs being wasted is present in every property acquisition. To the extent that a right of first refusal heightens this risk, I find it to be *de minimis.*

The majority attempts to distinguish the *Weber* line of cases on the grounds that those cases usually involve unique interests in land. The majority, however, does not provide any analysis to buttress the proposition that these cases mandate a result any different than the result required in the case *sub judice.* Something more than a recitation of the facts and conclusory statement by the majority is required in this regard.

In sum, I believe that a right of first refusal does not hinder the alienability, marketability, or development of

---

**3.** Ferrero also argues that the Court should not create a new exception to the rule against perpetuities because the legislature has codified the rule and created its own exceptions. Maryland Code (1974), § 11–102 of the Estates and Trust Article. The Code section cited by Ferrero, however, is limited to cases involving estates and trusts. Rourke's right of first refusal is unrelated to an estate or trust, and § 11–102 therefore does not apply. Thus, I need not address Ferrero's argument.

property and therefore conclude that the rule against perpe-tuities should not apply. I therefore dissent.

Judge McAULIFFE has authorized me to state that he concurs with the views expressed herein.