433 N.W.2d 505 (1988)
230 Neb. 753
FLEMING CO. OF NEBRASKA, INC., Appellant,
v.
Forrest R. MICHALS, Sr., Appellee.
No. 87-333.
Supreme Court of Nebraska.
December 30, 1988.
*506 Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, Lincoln, for appellant.
Gary L. Dolan, of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, for appellee.
BOSLAUGH, WHITE, CAPORALE, and SHANAHAN, JJ., and JAMES MURPHY, District Judge.
SHANAHAN, Justice.
The Fleming Co. of Nebraska, Inc., appeals from the judgment of the district court for Lancaster County, which, in a bifurcated bench trial on the question of a settlement, found that Fleming had a settlement agreement with Forrest R. Michals, Sr., precluding Fleming's action based on a claim disposed by the settlement agreement, and dismissed Fleming's action.
"In a bench trial of a law action, factual findings by a trial court have the effect of a verdict and will not be set aside unless clearly erroneous." Alliance Nat. Bank v. State Surety Co., 223 Neb. 403, 404, 390 N.W.2d 487, 489 (1986).
Michals was the president of two Nebraska corporations, Beer Mart, Inc., and Mike's IGA, Inc., which operated a grocery and liquor store under the name "Mr. `B' IGA." Michals was a guarantor of the corporations' indebtedness to Fleming.
In March of 1984, Mr. "B" IGA closed on account of lack of business. On September 6, 1984, Michals' attorney wrote Fleming's attorney:
I am enclosing a copy of a Complaint that our office will file on behalf of Mike's IGA, Beer Mart, Inc., Forrest R. Michals, Sr., and Forrest R. Michals, Jr., *507 against The Fleming Company of Nebraska, Inc. Our clients would consider not filing this action and giving release of the claims noted therein if they, in return, are given a complete release of all claims of The Fleming Company of Nebraska, or any related companies, who may have a claim against them.
The "Complaint" mentioned in the foregoing letter apparently related to Michals' prospective antitrust suit against Fleming.
On September 27, Fleming's lawyer stated in a letter to Michals' attorney:
This will respond to your letter of September 6, 1984 regarding the above matter. Fleming Companies, Inc. and the Fleming Co. of Nebraska, Inc. hereby accept the settlement proposal set forth in your letter. It is my understanding that the mutual releases will also release any interest or claim that your clients may have in the leased premises and trade fixtures.
Although your letter does not mention Mr. George Christatos, since he was involved with Mike's IGA, Inc. it seems to me that it would be in both of our clients' interests to have Mr. Christatos be a part of the settlement. Please advise if your office represents Mr. Christatos, or if your clients can obtain Mr. Christatos' cooperation.
I will contact you early next week so that we can begin to prepare releases and any other documentation necessary to formalize the settlement.
George Christatos was involved in the Michals corporations at their inception but had since been bought out by Michals. There was no further correspondence between the parties until October 17, when Fleming's attorney wrote Michals' lawyer:
Fleming Companies, Inc. and the Fleming Co. of Nebraska, Inc., hereby withdraw their counterproposal set forth in my letter to you of September 27, 1984, to settle the disputes between the parties with regard to the above matter. I have been directed by my clients to proceed to file an action against Mr. Michals on his Guaranty as soon as possible, and you should proceed accordingly.
On October 29, 1984, Fleming filed this suit against Michals to recover on the guaranties. In his answer, Michals denied any default in the corporate debts owed Fleming and alleged Fleming's antitrust violations, misrepresentation, and a settlement agreement embodied in the letters of September 6 and 27.
A settlement agreement is subject to the general principles of contract law. Omaha Nat. Bank v. Mullenax, 211 Neb. 830, 320 N.W.2d 755 (1982). To have a settlement agreement, there must be a definite offer and an unconditional acceptance. Zimmerman v. Martindale, 221 Neb. 344, 377 N.W.2d 94 (1985).
Disposition of this appeal, we believe, is controlled by the not-so-recent decision Nebraska Seed Co. v. Harsh, 98 Neb. 89, 152 N.W. 310 (1915). In Nebraska Seed, the syllabus by the court includes: "A valid contract of sale may be made by correspondence, but courts will not construe as a binding agreement letters which the parties intended only as a preliminary negotiation." Harsh wrote to Nebraska Seed: "` "I have about 1,800 bu. or thereabouts of millet seed of which I am mailing you a sample. This millet is recleaned and was grown on sod and is good seed. I want $2.25 per cwt. for this seed f.o.b. Lowell."'" Id. at 89, 152 N.W. at 310. Nebraska Seed responded by telegram to Harsh: "`"Sample and letter received. Accept your offer. Millet like sample two twenty-five per hundred. Wire how soon can load."'" Id. at 90, 152 N.W. at 310. When Harsh did not deliver the millet, Nebraska Seed sued Harsh and obtained a verdict on account of Harsh's breach of contract for sale of the millet. However, this court reversed the judgment for Nebraska Seed and stated:
In our opinion, the letter of defendant cannot be fairly construed into an offer to sell to the plaintiff. After describing the seed, the writer says: "I want $2.25 per cwt. for this seed f.o.b. Lowell." He does not say I offer to sell to you. The language used is general....

*508 "If a proposal is nothing more than an invitation to the person to whom it is made to make an offer to the proposer, it is not such an offer as can be turned into an agreement by acceptance. Proposals of this kind, although made to definite persons and not to the public generally, are merely invitations to trade; they go no further than what occurs when one asks another what he will give or take for certain goods. Such inquiries may lead to bargains, but do not make them. They ask for offers which the proposer has a right to accept or reject as he pleases." [Citation omitted.]
The letter as a whole shows that it was not intended as a final proposition, but as a request for bids....
....
... In Lyman v. Robinson, 14 Allen (Mass.) 242, 254, the supreme court of Massachusetts has sounded the warning: "Care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation."
98 Neb. at 90-92, 152 N.W. at 311. See, also, Rhen Marshall, Inc. v. Purolator Filter Div., 211 Neb. 306, 318 N.W.2d 284 (1982); Neff v. World Publishing Company, 349 F.2d 235 (8th Cir.1965).
In Ferrero Constr. v. Dennis Rourke Corp., 311 Md. 560, 536 A.2d 1137 (1988), Ferrero Construction sent a letter on March 12, 1984, to Dennis Rourke Corp. (Rourke), requiring that Rourke submit an offer by March 21, 1984, "`in order to be considered,'" and detailed the contents of the offer to be submitted. 311 Md. at 577, 536 A.2d at 1145. Rourke submitted the designated proposal within the allotted time. When Ferrero refused to carry out the transaction, Rourke filed an action seeking specific performance of the "contract" which resulted from Rourke's timely response to Ferrero's letter. In holding that there was no contract between the parties as the result of Ferrero's letter and Rourke's response, the court stated:
[T]he language of the March 12, 1984, letter represents only an effort to solicit an offer from Rourke. The letter requests information as to whether Rourke "intend[ed] to submit a contract." In addition, the March 12th letter states that Rourke's contract had to be in Ferrero's hands by March 21, 1984, "in order to be considered." The letter thus suggests that Ferrero intended only to learn whether Rourke would "submit" an offer/"contract" which Ferrero might "consider" accepting. An invitation to submit an offer is not itself an offer; the submission of an offer, pursuant to the invitation, is not an acceptance. 311 Md. at 577-78, 536 A.2d at 1145. See, also, Restatement (Second) of Contracts § 26, comment d. at 77 (1981); illustration:
4. A writes B, "I am eager to sell my house. I would consider $20,000 for it." B promptly answers, "I will buy your house for $20,000 cash." There is no contract. A's letter is a request or suggestion that an offer be made to him. B has made an offer.
See, further, Harvey v. Facey, [1893] App. Cas. 552 (P.C.), which is the basis for the preceding illustration.
Michals made no definite offer in the September 6 letter. The letter stated that Michals "would consider" forbearance of an antitrust suit and a release of claims against Fleming in return for Fleming's release of claims against Michals. To paraphrase Michals' September 6 communication to Fleming, Michals would think about or reflect on forbearance of an antitrust action and a release of claims against Fleming in exchange for Fleming's release of claims against Michals. Michals' overture in the September 6 letter lacks an actual and definitive promise or obligation imposed on Michals. Fleming could not accept a nonexistent offer. If Michals' September 6 letter were an offer, then the proverb related by Heywood, "A penny for your thought," becomes a standard applicable in contract cases, even in these inflationary times, but that is another consideration. The September 6 letter did not constitute an offer, but was Michals' invitation for Fleming's submission of an offer. Although Fleming's response may have been an offer, and for our purposes we assume that Fleming's response was an *509 offer, Fleming's offer was withdrawn before Michals' acceptance. Without an offer and acceptance there was no settlement agreement precluding prosecution of Fleming's action.
The district court's finding that a preclusive settlement agreement existed is incorrect as a matter of law and, therefore, clearly erroneous. The district court's judgment is reversed, and this matter is remanded for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.