598 A.2d 470

**Diane AYRES**

v.

**John Melville TOWNSEND et al.**

**No. 138, Sept. Term, 1990.**

Court of Appeals of Maryland.

Nov. 22, 1991.

---

Arthur L. Rhoads, Jr. and Andrew J. Long, III, Baltimore, for appellant.

Jeffrey H. Gray, Monkton, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ.

MURPHY, Chief Judge.

This case focuses upon Maryland Code (1986, 1991 Cum. Supp.), Title 14, Subtitle 8, Part III, entitled "Tax Sales," of the Tax–Property Article, and presents the question whether the holder of a right of first refusal in a recorded deed is entitled to actual notice of a proceeding by a tax sale purchaser to foreclose the right of redemption.

The Tax–Property Article requires, in § 14–832, that provisions relating to tax sales "shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the circuit courts and for the decreeing of marketable titles to property sold by the collector." Section 14–836(b)(1) provides, insofar as here pertinent, that the defendants in any action to foreclose the right of redemption shall be

"(i) the record title holder of the property as disclosed by a search performed in accordance with generally accepted standards of title examination of the land records of the county, of the records of the register of wills of the county, and of the records of the circuit court for the county."

Other pertinent provisions of this section delineate, as additional parties entitled to actual notice (a) any mortgagee of the property or any assignee of the mortgagee of record, (b) the trustee under any deed of trust or any holder of a beneficial interest in a deed of trust who files notice of the interest, and (c) the county where the property is located and, if appropriate, the State. Section 14–836(b)(3) makes it unnecessary to name as a defendant "any other person that has or claims to have any right, title, interest, claim, lien or equity of redemption in the property sold by the collector." As to these persons, the subsection states that they are included as defendants by the designation:

" 'all persons that have or claim to have any interest in property ........ (giving a description of the property in substantially the same form as the description that appears on the Collector's certificate of tax sale).' Any of these persons may be designated throughout the proceeding by the above designation and the cause may proceed against them by publication under order of court as provided in this subtitle."

Section 14–839(a)(2) provides that the plaintiff need not "make any investigations or ... search any other records or sources of information other than those stated." Section 14–840 provides for notice by publication of the pending tax sale action.

## I.

John Townsend acquired a parcel of ground from his mother who also conveyed an adjoining parcel to Townsend's sister, Virginia Lee Amato. A confirmatory deed was executed between John Townsend and Amato on June 25, 1982, which, *inter alia,* corrected certain irregularities in the description of the parcels conveyed by their mother.

In the confirmatory deed, Townsend and Amato granted unto each other and their respective personal representatives and assigns the "right of first refusal in the event of the proposed sale of all or any part of any of the lands herein described."

Townsend became delinquent in the payment of taxes, and on May 19, 1986, his parcel was purchased by Diane Ayres from the Director of Finance and Collector of State and County Taxes of Baltimore County. Subsequently, Ayres instituted proceedings in the Circuit Court for Baltimore County to foreclose all rights of redemption; she named as defendants, Townsend, Baltimore County, Maryland, any unknown owner, and "all persons having or claiming to have any interest in the described property." Amato was not specifically named as a defendant, nor did she have actual notice of the sale or of the foreclosure proceedings. A notice by publication of the proceeding was published in a Baltimore County newspaper, as required by § 14–840 of the Tax–Property Article.

A decree foreclosing all rights of redemption was signed by the court on September 7, 1988 and in due course the Collector conveyed the Townsend parcel to Ayres. Upon discovering that Ayres had acquired the Townsend parcel, Amato moved to set aside the judgment foreclosing the rights of redemption and requested that the court allow her, as the holder of the first refusal right, to redeem the property.

Finding that Amato was entitled to actual notice under § 14–836(b)(1)(i), the court on August 15, 1990 ordered that the judgment foreclosing rights of redemption of the subject property be set aside and granted Amato the right to redeem. Ayres appealed. We granted certiorari before consideration of the appeal by the intermediate appellate court to address the important issue presented in the case.

## II.

Ayres argues that in a proceeding by a tax sale purchaser to foreclose the equity of redemption, the owner of a right

of first refusal is not required by § 14–836(b)(1) to be named as a defendant. First, she asserts that Amato was not "the record title holder of the property," as disclosed by a search of the land records, and thus was not required by the statute to be named as a defendant. She claims that the definition of record title holder should be narrowly construed to include only the owner of the fee simple interest in the subject property, namely, Townsend, who was given notice thirty days before the property was first advertised for sale in the foreclosure proceeding.

Secondly, Ayres argues that a covenant between a landowner and a holder of a right of first refusal is a personal contract between the parties. She says that the contract merely requires the landowner, when and if the landowner decides to sell, to offer the property first to the holder of the right of first refusal. Because it was not Townsend's decision to sell his property, Ayres suggests that the sale was not voluntary on his part but made simply to satisfy his tax arrearage. Thus, according to Ayres, Amato was not entitled to exercise her first refusal right to acquire the property since that right does not extend to foreclosure or other involuntary proceedings instituted to satisfy delinquent tax obligations.

Finally, Ayres argues that § 14–832, relating to tax sales, requires a liberal construction to encourage the foreclosure of rights of redemption and for the decreeing of marketable titles of property sold by the collector. As to this, she cites *Thomas v. Kolker*, 195 Md. 470, 73 A.2d 886 (1950), for the proposition that the legislature has declared that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure. Since there were no fraud or jurisdictional issues involved in the proceedings, Ayres asserts that Amato's right of first refusal should not be permitted to defeat the tax sale in this case.

Amato responds that the trial court acted properly when it ruled that the owner of a right of first refusal is a

"record title holder" entitled to be named as a defendant within the contemplation of the statute. She urges that we give a broad interpretation to this term to include a holder of a right of first refusal because (1) her interest in the parcel was ascertainable through a search of the land records and (2) Townsend could not convey good title to the parcel without her prior assent. In support of her position, Amato relies upon *Brashears v. Collison*, 207 Md. 339, 115 A.2d 289 (1955), which held that a life tenant and remaindermen of property were entitled to notice of a tax sale purchaser's action to foreclose the rights of redemption. Amato contends that § 14–836(b)(1)(i) guarantees, to the extent possible, that those persons with recorded interests in the subject property, including persons holding a right of first refusal, are identified and made party defendants, thereby entitling them to summons and actual notice, as well as notice by publication.

### III.

Whether the actual notice requirements of § 14–836(b)(1)(i) encompass a holder of a right of first refusal is essentially a matter of statutory construction. In interpreting the statute's provisions, our goal is to ascertain and effectuate the intention of the legislature. Our focus is, therefore, centered upon the statute's purpose or policy. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987). Where statutory language is unambiguous, and clearly consistent with the statute's apparent purpose, the words will be accorded their ordinary meaning. *Prince George's County v. Burke*, 321 Md. 699, 706, 584 A.2d 702 (1991).

Section 14–836(b)(1), prior to its amendment by ch. 825 of the Acts of 1986 (HB 1828), provided that, among others, the "owner" of the property was required to be given actual notice in any action to foreclose the right of redemption. The word "owner" was deleted by the 1986 amendment; in its place the term "record title holder" was used. Chapter

825 made numerous other amendments to the tax sales provisions of Title 14, Subtitle 8, Part III, of the Code.

The title to HB 1828 stated, *inter alia*, that it was for the purpose of altering the laws concerning tax sales, including "who may be a defendant in a suit to foreclose the right of redemption." The bill was referred to the House Committee on Ways and Means which gave it a favorable report, without amendments; the report of that committee stated that the bill alters the law concerning tax sales, including "allowing all parties with interests in properties (not only the owner of record) to put that interest on record so that they will be identified in title searches of tax sale properties." The bill, after its passage through the House of Delegates, was substantially amended by the Senate Judicial Proceedings Committee; the report of that committee said that the bill contained a redefinition of defendants under § 14–836(b)(1)(i) "to include the record title holder." The bill was intended, according to the Senate committee's report, "to address due process concerns about notice provided in tax sales of property," in order to provide "greater protection for due process by facilitating notice of tax sales of property in the State." The bill was enacted after the House concurred in the Senate amendments.

## IV.

During oral argument before us (but not in her brief), Amato suggested that the 1986 amendments to § 14–836(b)(1)(i), which substituted "record title holder" for "owner," were inspired by the Supreme Court's 1983 holding in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180. The issue in that case was whether the due process clause of the fourteenth amendment was violated by an Indiana statute which required only that notice by publication, rather than actual notice, be given to a mortgagee of real property sold to a purchaser for nonpayment of taxes. The Court, in finding a due process violation, cited *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865

(1950), for the proposition that, in an action affecting an interest in property, a State must require notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. In *Mullane,* the Court held that published notice of an action to settle the accounts of a common trust fund was not sufficient to inform beneficiaries of the trust whose names and addresses were known. The Court explained in that case that notice by publication was not reasonably calculated to provide actual notice of the pending proceeding and was therefore inadequate to inform those who could be notified by more effective means, such as personal service or mailed notice.

The Court concluded in *Mennonite* that a mortgagee possesses a substantial property interest that is significantly affected by a tax sale, and therefore due process considerations required that a mortgagee of property sought to be sold at a tax sale must be afforded notice reasonably calculated to apprise him of the pending sale.

The Maryland statute, well before enactment of the 1986 amendments to § 14–836(b), provided for actual notice of a tax sale to a mortgagee of real property. Thus, at the time of passage of the 1986 amendments, the specific holding in *Mennonite* did not require any change in the Maryland statute, as it then existed. There is no mention in the legislative committee reports that the principle espoused in *Mennonite* was the catalyst for changing "owner" to "record title holder" in § 14–836(b)(1)(i). But even if it was, we conclude that this change was not intended by the legislature to include a right of first refusal within the term "record title holder."

As Judge Eldridge said for the Court in *Ferrero Constr. v. Dennis Rourke Corp.,* 311 Md. 560, 565, 536 A.2d 1137 (1988), a right of first refusal to purchase property is commonly known as a "preemptive right." It is an

interest in property, and not merely a contractual right, whereby the preemptioner acquires an equitable right in the property, which vests only when the property owner decides to sell. *Id.* We there characterized the right as one " 'in the nature of a springing executory interest.' " *Id.* *See also Dorado v. Broadneck*, 317 Md. 148, 562 A.2d 757 (1989); *Straley v. Osborne*, 262 Md. 514, 522, 278 A.2d 64 (1971) (right of first refusal is a "conditional option, or first privilege of purchase"); *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 449, 171 A.2d 736 (1960) (the right is an equitable one, which requires the owners of the property to give the holder of the right notice if the owner decides to sell the property).

■ It is clear that Amato's interest in the property was delineated in the deed and, therefore, was ascertainable through a search of the land records. That, of course, does not elevate her interest to that of a "record title holder," within the contemplation of § 14–836(b)(1)(i); rather, her right to notification of the tax sale was by publication under the provisions of § 14–836(b)(3) as a person having an interest in the property, but not specifically required to be named as a defendant.

■ There is a presumption of the constitutionality of a statute; to overcome the presumption, there must be a clear and convincing showing by the party assailing the statute that it does not rest upon any reasonable constitutional basis but is essentially arbitrary. *See Hornbeck v. Somerset Co. Bd. of Educ.*, 295 Md. 597, and cases cited at 657, 458 A.2d 758 (1983). Amato made no showing that the statutory classification of those entitled to actual notice of the tax sale, as opposed to constructive notice, was constitutionally defective. We, therefore, hold that a right of first refusal, while a valuable interest in property, does not, in common parlance, come within the ambit of a "record title

holder."[1]

JUDGMENT REVERSED, WITH COSTS.

---

**1.** Independent of our reasons for concluding that notice by publication was constitutionally adequate in this case, we note the existence of a line of cases holding that a right of first refusal may not attach when the sale of the property is an involuntary one, such as in tax sale proceedings. *See Henderson v. Millis*, 373 N.W.2d 497 (Iowa 1985); *Nu–Way Service Stations v. Vanderberg Bros. Oil Co.*, 283 Mich. 551, 278 N.W. 683 (1938); *Draper v. Gochman*, 400 S.W.2d 545 (Texas 1966); Annotation, *Rights of Holder of "First Refusal" Option on Real Property in Event of Sale at Foreclosure or Other Involuntary Sale*, 17 A.L.R.3d 962 (1968).

We also note that a right of first refusal is subject to the Rule Against Perpetuities. *See Ferrero Constr. v. Dennis Rourke Corp.*, 311 Md. 560, 565–67, 536 A.2d 1137 (1988). The language creating the first refusal right in this case granted the right unto Amato, "her ... personal representatives and assigns" without limit as to duration. As *Ferrero* makes clear, in some circumstances where the right is not limited to a term of years, it might vest well beyond the period of some life in being plus twenty-one years, and hence be unenforceable as in violation of the Rule Against Perpetuities.