658 A.2d 1182

**EASTERN CORRECTIONAL INSTITUTION**

v.

**Peter Michael HOWE.**

**No. 1373, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

June 2, 1995.

---

Alan D. Eason, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

John F. Conwell (J. Edward Davis, on the brief), Towson, for appellee.

Argued before WILNER, C.J., and MOYLAN and CATHELL, JJ.

CATHELL, Judge.

Appellant, Eastern Correctional Institution,[1] appeals from the granting of Peter Michael Howe's, appellee's, motion to dismiss its administrative appeal by the Circuit Court for Somerset County (Long, J., presiding).

Appellant presents one question, which we rephrase as:

Does the Commissioner of Correction lack the authority to impose direct disciplinary demotions on employees appointed by wardens of a particular correctional facility?

As the only issue before us relates to a matter of law, we briefly summarize the facts. Appellee, an employee of the Eastern Correctional Institution, was placed on probation before judgment in a criminal court proceeding for two criminal offenses. He promptly informed the warden of the institution. The warden then recommended (for reasons not pertinent here) that appellee not be demoted. The warden's superior, the Commissioner of Correction, nevertheless recommended to the Secretary of Personnel that appellee be demoted. Appellee appealed and an administrative law judge held that the Commissioner lacked direct authority to recommend demotion and proposed to dismiss the demotion action. Exceptions to the administrative law judge's proposed decision were taken by appellant. The Secretary's properly designated official concluded; contrary to the ALJ's proposed findings, that the Commissioner did have such authority and ordered that appellee be demoted. Appellee then appealed that decision to the circuit court. The trial court agreed with the ALJ that the Commissioner lacked direct authority to demote appellee and ordered that the decision of the Secretary of Personnel (her designee) "be . . . reversed." This appeal then ensued.

One of the determinative factors involves the meaning and effect of Maryland Code (1957, 1992 Repl.Vol., 1994 Cum.

---

1. The Commissioner of Correction is the actual appellant. The case was apparently captioned at the trial level as we indicate above. The parties have thus captioned the appeal as indicated.

Supp.), Art. 27 § 684(b)(2), which now provides in relevant part:

The warden or superintendent of each institution is the appointing officer for employees of that institution, and the Commissioner is the appointing officer for all other employees in the Department.

Subsection (b)(1) provides that

all officers and employees of the Department shall be appointed and removed ... in accordance with the provisions of the State Personnel Article that govern the classified service.

We shall shortly review the prior versions of this subsection to see if something other than what its clear language indicates was intended. First, we shall discuss the rules relating to statutory construction and then attempt to apply those lessons to the statutes here involved.

The Court noted in *Motor Vehicle Admin. v. Seidel Chevrolet, Inc.*, 326 Md. 237, 248–49, 604 A.2d 473 (1992):

We have stated time and time again that the cardinal rule of statutory construction is to ascertain and effectuate legislative intent. In our quest to divine the Legislature's intent, we have also explained:

"There is no doubt that the beginning point of statutory construction is the language of the statute itself.... When we look at the statutory language, we attempt to give effect to all the words in the statute. And sometimes it may not be necessary to go further than the scrutiny of statutory language, for the language itself may be sufficiently expressive of the legislative purpose or goal.

But our endeavor is always to seek out the legislative purpose, the general aim or policy, the ends to be accomplished, the evils to be redressed by a particular enactment. In the conduct of that enterprise, we are not limited to study of the statutory language. The plain meaning rule ' "is not a complete, all-sufficient rule for ascertaining a legislative intention...." ' The 'meaning of the plainest language' is controlled by the context in which it appears.

Thus, we always are free to look at the context within which statutory language appears. Even when the words of a statute carry a definite meaning, we are not 'precluded from consulting legislative history as part of the process of determining the legislative purpose or goal' of the law." [Citations omitted.]

*See Ayres v. Townsend,* 324 Md. 666, 672, 598 A.2d 470 (1991) ("[O]ur goal is to ascertain ... the intention of the legislature.... [U]nambiguous ... words will be accorded their ordinary meaning." (citation omitted)); *State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976) ("[T]he language of the statute ... constitutes the primary source for determining the legislative intent. Where there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intention...." (citations omitted.)).

[W]here statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning.

*Id.* at 421–22, 348 A.2d 275. *See also Police Comm'r v. Dowling,* 281 Md. 412, 418–20, 379 A.2d 1007 (1977), and *Columbia Road Citizens' Ass'n v. Montgomery County,* 98 Md.App. 695, 702, 635 A.2d 30 (1994) ("[S]tatutes should be interpreted according to their plain language, ... all parts should be construed in harmony, as a whole."). Compare *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987); and *State v. 149 Slot Machines,* 310 Md. 356, 529 A.2d 817 (1987), where the Court held that slot machines were not included within a statutory phrase "any other gaming device."

In construing the meaning of the language of Art. 27 § 684(b), we must first note that its correct interpretation is of additional importance in light of its relationship with the State Personnel and Pension Article provisions. We explain.

Section 4–604 of the State Personnel and Pension Article authorizes appeals to the Secretary of Personnel in matters regarding the demotion of employees in the classified service. The statute requires that "[t]he appointing authority immediately shall enforce a final decision issued under this section." § 4–604(e). COMAR 06.01.01.02.41A(5) states, in part, that "[t]he appointing authority shall enforce the decision." That same regulation initially provides that "[a]n appointing authority may submit to the Secretary a written recommendation for the demotion...." COMAR 06.01.01.02.41A(1). It then provides "the ... authority shall enforce the decision." COMAR 06.01.01.02.41A(5). The Revisor's note to § 4–604 of the statute directs the reader to § 1–101 for a definition of "appointing authority." That section defines "Appointing authority" as

an individual or a unit of government that has the power to make appointments and terminate employment.

§ 1–101(b). The Revisor's note to § 1–101(b) points out that the term "unit of government" was

substituted for the former references to a "person" for clarity. The term "person", as defined in subsection (h)[2] ... expressly excludes governmental ... units. [A] ... governmental unit ... might well be designated by some other law as an appointing authority. Accordingly, the term "unit" is necessary to accommodate *that* situation. [Emphasis added.]

Thus, as we perceive these statutes, the term "appointing authority" contemplates a person with authority to make appointments, or a unit of government that has been given that express authority by statute.

Appellant (and, for that matter, appellee) asserts that Article 27 § 684(b) and the State Personnel and Pension Article section must be considered in light of the Department's regulation that states that:

---

2. Subsection (h)(2) states, "Unless expressly provided otherwise, 'person' does not include a governmental entity or a unit or instrumentality of a governmental entity."

an appointing authority may submit to the Secretary a written recommendation for the demotion of an employee, and shall provide the employee with a copy.

This regulation apparently is intended to comport with subsection (b) of Section 4–604, which provides that requests or recommendations must be made "on written charges submitted to the Secretary." Moreover, COMAR 06.01.01.01B(1) defines appointing authority as "a person who has the power to make appointments and to terminate employment."

We have set forth the various sections of the two statutes and their relationships in order to show (as we shall, *infra*) how their relationship has evolved since the legislature's initial decision in 1962 to change the nature of the duties and responsibilities of various officials in the corrections system. In other words, the COMAR regulations are a reaction to both statutes. Article 27 § 684(b) and its predecessor statutes, however, defined "appointing authority" and the duties of wardens long prior to the applicability of the State Personnel and Pensions Article (or its predecessor, Md.Code Art. 64A) or the regulations at issue here.[3]

Prior to the 1962 amendments, the comparable section was found in Md.Code (1957), Art. 27 § 685. It did not contain language comparable to the present section 684(b). It noted, rather, that

[t]he said wardens shall each for the respective institutions employ, *with the approval of said Board* [of Correction] ... such other employees as may to said Board seem necessary for the proper management of said institutions. The said wardens *and all persons employed by them* ... shall perform their employment only *during the pleasure of said Board*....

Thus, at that time, the then equivalent to the present Commissioner of Correction had the power of employment approval over all employees at an institution and all of them served at the "pleasure of the Board." That Board, by

---

3. We will discuss the agency's prior interpretations, *infra*.

statute, had direct appointment approval and direct termination authority over all employees.

That section, as relevant to this case, was substantially and substantively changed by Chapter 123 of the Laws of 1962, a comprehensive revision of the correction statute to its current form. As codified, the pertinent language of that revision, section 684(b), reads:

> The warden ... of each institution is the appointing officer for employees of that institution, and the Commissioner is the appointing officer for all other employees in the Department.

The prior language affording to the Board of Correction employment approval and direct termination authority is conspicuously absent in the 1962 revision. Looking only to the change in the language of the sections, *i.e.*, that which was deleted, it is clear that the former direct authority of the Board was intentionally changed to an indirect overview of a warden's employment practices. A statutory chain of command system, as it were, was substituted for the previous direct management of employees by the Board (*i.e.*, the Commissioner).

Chapter 123 of the Acts of 1962 was a comprehensive revision of the correction statutes. Its purposes section notes, that it was intended as a revision and that it was to provide "generally for the operation, administration and control of the Department of Correction, the several penal ... institutions ... and the officers and employees thereof ... and relating general[ly] to the Department ..., its officers, employees, powers, duties, responsibilities, functions...."

The Act also then provided, in section 682(b), that a warden

> [s]ubject to Departmental *policy* as established from time to time by the Commissioner ... is in *sole and direct* charge of his institution, and it is *his duty to supervise* the ... *discipline,* and *policy* of his institution and to *enforce* all orders and regulations of the department. [Emphasis added.]

We have not found any comparable language to that established above in the prior statute. The language added to the statute by the 1962 amendment is still contained in current section 682(b). Thus, the statute still states that a warden is in *sole and direct* charge."

Section 684(b) was amended by Chapter 662 of the Laws of 1976. The amendment dealt with the appointment and removal of employees, while leaving the status of the warden as an appointing authority unchanged. It made the appointment and removal of employees subject to then Art. 64A, the predecessor statute to the State Personnel and Pension Article. Even then, despite the obvious opportunity, when dealing with appointment and removal matters, to change a warden's status, that 1976 amendment did not do so. At that time, the only relevant references in Art. 64A to an appointing authority were found in section 1, "Definitions" (" 'Appointing authority' means any commission, board or officer having power to make appointments."), and section 33, "Separation of employees," that provided, in part:

> The appointing authority may . . . reject any person [for appointment to a classified position] . . . upon statement . . . of the cause for rejection. . . .

> No employee . . . may be permanently removed . . . except . . . upon written charges. . . . Such charges may be filed by the appointing authority or by any citizen, provided . . . that no such charges may be filed by a citizen, without the consent of the appointing authority or of the Secretary. . . .

Section 36, "Suspension," provided that "[t]he appointing authority may . . . suspend an employee. . . . [A]ny employee who is suspended by the appointing authority may appeal . . . to the Secretary of Personnel. . . . With respect to his [the Secretary of Personnel] employees the Secretary shall be deemed the appointing authority. . . ."

The last substantive change to Art. 27, § 684(b) occurred by the comprehensive revision in 1962. That revision, as we have said, changed the direct authority of the then Board to an

indirect chain of authority over a warden's decision. It, first, in § 682(b), legislated that "the warden ... is in sole and *direct* charge of his institution, and it is his duty to supervise the ... discipline, and policy of his institution and to enforce all orders and regulations of the department." Then the act provided that wardens would be the appointing authority as to their institutions, then expressly stating, as now, that "the Commissioner is the appointing officer for all *other* employees...." § 684(b) (emphasis added).

In respect to the present statute, Art. 27 § 684(b), having considered its legislative history, we conclude that (1) it is not ambiguous in the first instance; (2) a review of the legislative history establishes that the legislature intended it to mean exactly what its language encompasses—a transfer of direct authority over appointments and discipline in the respective places of incarceration to the wardens, designating them as "appointing authorities;" and (3) wardens, in respect to the employees within their institutions, are the appointing authorities.

Moreover, our review of the provisions of the State Personnel and Pensions Article reveals that it requires the appointing authority to take certain steps and, as we have indicated, defines an appointing authority as "an individual or a unit of government that has the power to make appointments *and* terminate employment." § 1–101(b) (emphasis added). We have previously noted that the term "unit of government" was added to avoid conflict with another section if a unit of government had statutory appointing authority. Under Art. 27 § 684(b), the Commissioner and wardens are given separate and distinct authority to appoint. The Commissioner "is the appointing officer for all *other* employees of the Department." The warden is the appointing authority "for employees of that institution." It is undisputed that appellee is an employee "of the institution."

Appellant proffers in its brief that "where, as here, the Commissioner has *all* authority over the operation of the Division and its institutions, it is absurd and unreasonable to read the statute to exclude him from hiring and firing in favor

of an employee [the warden] who serves at his pleasure." We do not find it absurd for the General Assembly to create a system whereby a warden, with hands-on responsibility for immediate control and supervision over a specific institution, is given the authority to initiate the appointment and demotions of the employees of that institution. Certainly, if the Commissioner is dissatisfied with the warden's actions, he can, utilizing proper procedures, discharge the warden. It is clear that the 1962 law reduced the power of the Board in the area of appointments and terminations.

We do note that the Commissioner may have the power to promulgate regulations requiring the immediate discharge of an employee who has been placed on probation before judgment. We make that acknowledgement with some caution, however. *See Curry v. Department of Pub. Safety & Correctional Services* and *Dept. of Public Safety & Correctional Servs. v. Flagg,* 102 Md.App. 620, 651 A.2d 390 (1994). Even if such regulations were to be in place, however, and we are not so informed, appellant's choice would not be to initiate the demotion itself but to discharge a warden who failed to comply with the termination regulation. *See Maryland State Dep't of Health and Mental Hygiene v. Phoebus,* 319 Md. 710, 575 A.2d 335 (1990), where the Court held that there was no dispute that the Secretary of that Department was, as to Phoebus, the appointing authority. The Court went on to note:

> During the ... administrative proceedings, Mr. Phoebus established that, under the pertinent statutes and regulations, the Secretary ... was the official having the authority to remove Mr. Phoebus from his position.... Neither the letter nor the testimony suggested that the removal decision had been approved by the Secretary [the statutorily authorized appointing authority].... [T]here arose a prima facie case that Mr. Phoebus had not been terminated by someone having the authority to do so.

319 Md. at 717, 575 A.2d 335.

We are informed that the agency has issued prior rulings consistent with its position that the agency is an appointing

authority for purposes of demotions (and, we presume, for purposes of appointment as well). It refers to those rulings as being found on pages 16 through 18 of the extract. Our review of those pages, as to any such prior rulings, indicates only one decision in a case involving multiple parties, where a hearing officer stated:

> The hearing officer agrees with counsel for the agency that little common sen[s]e can be found in a statutory interpretation that holds that a head of an agency is without authority to act where a subordinate is. The definition of appointing authority has been debated for many years and was made even more obscure with the creation of the cabinet form of government in Maryland. The closest we have come to a legal definition of the term can be found in *Eliason v. State Roads Commission*, 231 Md. 257, 189 A.2d 649 [ (1963) ] which states inter alia at page 260 [189 A.2d 649]:
>
>> "In deciding whether to permit the filing of charges looking into the discharge of an employee, the appointing authority (the agency for which he works) ..."
>
> Lacking a better definition, the Employer–Employee Relations Division has for many years adopted the *Eliason* definition, which makes the appointing authority an entity, rather than an individual.
>
> Counsel for the employees cited a factually similar case occurring a number of years ago in which considerable effort to ensure the signature of the Warden on a set of charges for removal. The hearing officer does not question the facts, but does suggest that the effort may have been wasted as the long standing administrative practice has been to follow the *Eliason* definition.

The agency's reliance on *Eliason* was, and is, misplaced. The nature of an appointing authority was not at issue in *Eliason*—the primary determinative issue was whether a hearing was required when a citizen initiated charges leading to termination. That issue concerned a citizen's right to seek the discharge of an employee. Under the provisions of then

§ 33 of Article 64A, charges could be filed by the appointing authority or *by a citizen* provided, however, that no such charges were to be filed by a citizen without the consent of the appointing authority *or* of the commissioner.

It was in the context of Art. 64A § 33 and a citizen's attempt to "recommend," *i.e.,* file charges of removal, that the *Eliason* quote, *supra,* was made. There was no dispute whatever about who the appointing authority was. The court was responding to the citizen's assertion that he was entitled to a contested hearing and had been denied it. It was in that context, *i.e.,* a citizen's claim that he (as opposed to the employee) had a right to a hearing, that the court, in determining that the termination was an executive function, as opposed to a judicial or quasi-judicial function, stated, partially as *dicta,* that:

> In deciding whether to *permit*[4] the filing of charges [by a citizen] looking to the discharge of an employee, the appointing authority (the agency for which he works). . . .

231 Md. at 260, 189 A.2d 649 (emphasis added). In the prior agency opinion, *supra,* the quote from *Eliason* terminated at a point where it could be, and was construed by the agency out of context. The termination of the quotation at that point is conspicuous, in that the actual quoted material continued in *Eliason* furnishing the purpose for which the language in context was used, *i.e.,* to describe the procedure used in citizen-generated termination proceedings:

> [T]he Commissioner acts in an executive and administrative capacity. The hiring and firing of employees is essentially administration by an executive. It does not cease to be executive because the need to make a decision is triggered by the request of a citizen for action. To decide whether to seek to discharge an employee requires determination of facts and the exercise of judgment and discretion, but this

---

4. The appointing authority by the warden does not need the consent of the Commissioner to file charges. Thus, the statement (whether as to the Commissioner of Correction or the warden) is limited in its application to citizen involvement in the bringing of charges.

does not of itself make the initial determination or the ultimate decision judicial or quasi-judicial.

*Id.* at 260–61, 189 A.2d 649. To the extent that *Eliason* has been used as precedent to support the position of the Commissioner of Correction that he is the appointing authority for employees of an incarceration facility, it has been misused. It does not state what appellant wishes it to say. Appellant's interpretation is wrong.

Appellant incongruously cites *Department of Health & Mental Hygiene v. Reeders Memorial Home, Inc.*, 86 Md.App. 447, 454–55, 586 A.2d 1295 (1991), to support the proposition that a reviewing court should give deference to an agency's interpretation of its own regulations. Quite aside from the fact that the Commissioner in the case *sub judice* was interpreting two statutes and a regulation, as opposed to merely construing its own regulations and rules, *Reeders* was a case where one of the agencies had interpreted its rules in one fashion and subsequently changed its interpretation. On appeal to the circuit court, that court ruled that the agency was bound by its prior interpretation, "finding that appellee ... was entitled to a consistent interpretation of the regulation." 86 Md.App. at 452, 586 A.2d 1295. We reversed, noting:

> Although the [agency] failed to enlighten the parties or the reviewing courts of the specific reasons ... in reversing itself, it is clear that its [most recent] interpretation ... is correct ... and ... we so hold.

*Id.* at 454, 586 A.2d 1295. We went on to note that the agency's last decision, that "the regulations as written are clear," was correct and upheld its change of interpretation of the regulation, saying:

> There is no need to attempt to divine any regulatory intent of the administrative agency here involved. "There is no ambiguity or obscurity in the language, [thus] there is no need to look elsewhere to ascertain the intent." ...
>
> In ... 1984 and 1985 NHAB misinterpreted the applicable regulations but corrected this interpretation in FY1986 and 1987. It was not bound in 1986 or 1987 by the doctrine

of *res judicata* particularly "where, as in this case, the administrative agency's original decision was based on an error of law." As appellant points out, the Department's [prior] interpretation ... has been consistent throughout the history of appellee's administrative experience with NHAB. Appellant's fault ... was in accepting without appeal the [prior interpretations]. . . .

*Id.* at 455, 586 A.2d 1295 (citations omitted).

*Maryland Comm'n on Human Relations v. Bethlehem Steel Corp.,* 295 Md. 586, 457 A.2d 1146 (1983), also cited by appellant, likewise primarily involved another issue, namely, the exhaustion of administrative remedies as the doctrine relates to the agency's interpretation of its own rules. In its discussion there, the Court of Appeals noted that

the agency's expertise is more pertinent to the interpretation of an agency's rule than to the interpretation of its governing statute.

295 Md. at 593, 457 A.2d 1146. The Court then noted that the doctrine of exhaustion of administrative remedies in that case, of necessity, applied because "the agency's construction of its rule is entitled to weight." *Id.* In the case *sub judice,* we are not dealing with a mere rule. We are dealing with statutes that define the appointing authority as the warden. There is no agency rule in the case at bar to which we have been directed that provides that the agency is, as to appellee, an "appointing authority." We are merely supposed to conclude that it is because, according to appellant, it makes sense. Moreover, we would doubt the authority of the Commissioner, to thwart the will of the General Assembly by empowering himself by rule, to be an appointing authority when the same statute that empowers the Commissioner with rule-invoking authority limits the commissioner's powers as an appointing authority to "other" employees.

In any event, the agency's interpretation of *Eliason's* applicability only applied to its rules, not to statutes, and was limited to the hearing issue. Appellant's reliance on *Eliason* in formulating what it terms an interpretation of a rule (that

does not exist) has been weighed. In the balancing, we are convinced it is not entitled to much weight—in our view, the scale weighs disproportionately against the agency's position.

The Court of Appeals has set forth the scope of review of agency actions on matters of law under the Administrative Procedure Act as:

, When, however, the issue before the agency for resolution is one solely of law, ordinarily no deference is appropriate and the reviewing court may substitute its judgment for that of the agency. In that circumstance, the scope of review is much broader.

*Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993) (citation omitted). The Administrative Procedure Act provides, in relevant part, that a reviewing court may "reverse ... [a] decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

. . . .

(ii) exceeds the statutory authority ... of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

. . . .

(vi) is arbitrary or capricious."

Md.Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 10–222(h)(3) of the State Government Article.[5]

We concur with Judge Long's findings that the procedure used by appellant in the instant case resulted from unlawful

---

**5.** The statute in effect at the time of the hearings in the matter was Md.Code (1984, 1993 Repl.Vol.), § 10–215 of the State Government Article, subtitle 2: Administrative Procedure Act. The standard of review of administrative proceedings was then set forth in subsection (g). As the two provisions are substantively similar in language and effect, we referred to the most recent codification as found in § 10–222(h)(3).

procedural tactics and/or other errors of law. Therefore, it was also arbitrary and capricious.

We conclude by reiterating that, in construing the meaning of the statute, Art. 27 § 684(b), we note that the 1962 revision, when read together with the statute it replaced, strongly indicates that the legislative body of government intended to change the nature of the relationship of the Commissioner (the then Board) from direct concurrent involvement, in conjunction with a warden, in the everyday handling of personnel matters, to an indirect overview of a warden's actions in respect to those personnel matters. At the same time, direct responsibility and authority for employee discipline was conferred "sole[ly]" on the warden. Under that statutory scheme, the warden is the appointing authority. Under the provisions of the State Personnel and Pensions Article (formerly, Art. 64A), the statutorily-created appointment and disciplinary authority of the warden (Art. 27 § 684(b) and 682(b)) makes the warden the appointing authority for the initiation of demotion recommendations. The same statutory provisions *limit* the Commissioner's *direct* appointing authority to employees that are not employed at the respective institutions of incarceration.

We hold that recommendations for demotions of employees at penal institutions must originate with the wardens of those institutions. While the Commissioner of Correction may dismiss the warden in a manner that comports with due process, the Commissioner may not undermine the warden's authority within the respective institution, by bypassing or overruling the warden and recommending demotion of employees subject to the warden's appointing authority. Judge Long was correct.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**